**Stephen Laurence CARMALT (Veteran's Reemployment Rights)**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Appellant.**

**No. 13771.**

United States Court of Appeals Third Circuit.

Argued Feb. 19, 1962.

Decided April 16, 1962.

John G. Wayman, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellant.

Stephen Laurence Carmalt, appellee, pro se.

Before GOODRICH, KALODNER and GANEY, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal by the defendant from a judgment for the plaintiff in an action brought under the Selective Training and Service Act of 1940, Act of Sept. 16, 1940, c. 720, § 8, 54 Stat. 890 (now 50 U.S.C.A.Appendix, § 459). The plaintiff sued on May 9, 1960, seeking reinstatement to his prior position and damages amounting to $153,487.56—his claimed loss of wages for the years between 1943 and 1960.

On December 30, 1940, the plaintiff was hired by the defendant (GMAC) in a probationary capacity as a "field representative" in Pittsburgh. This employment involved dealing with customers of GMAC who were delinquent in their accounts. The defendant produced evidence that the plaintiff was warned in February 1941, and again in March 1941, about unsatisfactory work. The defendant says that Carmalt was told on April 10, 1941, that he was being discharged, the discharge effective May 15, 1941. On April 11, the day after the notice of discharge was allegedly given him, he enlisted in the Army Air Corps, sending to GMAC an unsolicited resignation on April 14. The trial court found as a fact that Carmalt was an employee of GMAC at the time he went into the service. See 197 F.Supp. 266, 268 (1961). While this is a matter shrouded in considerable doubt, we shall accept the finding.

Carmalt was in Pearl Harbor at the time of the attack on that installation on December 7, 1941. After this he was assigned to Barking Sands Airfield in Hawaii, and from there he was hospitalized in a Hawaiian military hospital. After passing through several hospitals he was discharged from Bushnell General Hospital in Utah on April 13, 1943. The

medical report stated that he was of no further value to the service. On April 17, 1943, he received an honorable discharge for certified disability.

When Carmalt got out of the service he returned to Pittsburgh. He says that on April 21, 1943, he went to the GMAC offices and asked for his job back. According to Carmalt, Mr. Hawthorne, the assistant manager, said, "I am sorry, Stephen, I would like to take you back but we hear you have been discharged with mental disabilities." Again according to Carmalt, he said, "All right," and left without further comment. Mr. Hawthorne, a witness at the trial, had no recollection of this conversation nor do such office records as were available at the time of the trial show any application for reemployment. The trial court found as a fact that the veteran requested reemployment with the defendant on April 21, 1943.

What follows afterward is not shrouded with much doubt. After April 21, the plaintiff secured a series of jobs in West Virginia and also in Pennsylvania. The list is set out in the margin.[1] The last employment terminated in 1945. Not until 1959 did Carmalt go to the United States Attorney, who referred him to the Bureau of Veterans' Reemployment Rights. The Bureau told him that by delaying so many years it was impossible for them to verify his claim or to determine the facts concerning the matter. On May 9, 1960, he filed this suit.

Carmalt filed a disability claim upon his discharge from the service. He was first rated ten per cent disabled as of April 1943, and then 100 per cent disabled as of October 9, 1945. He has never been legally adjudged mentally incompetent and he, himself, insisted all through the trial that he was and is not incompetent and that being so labeled by the government medical service constituted "duress" against him.

The same difficulties which the Veterans' Administration found to giving Carmalt any assistance in what he claimed were his rights marks this trial. We think it is perfectly clear that the plaintiff abandoned his claim and further that he has been guilty of laches in the extreme sense. As to abandonment, his conversation with Mr. Hawthorne and the record of his various other employments have already been set out.

As to laches, it is to be borne in mind that there were seventeen years between his alleged claim for reemployment and the beginning of his lawsuit. The analogy to the Statute of Limitations is helpful in determining laches but not conclusive. Pennsylvania cases hold that where a man is not under a disability at the time his claimed cause of action arises, subsequent incompetency does not stop the running of the statute. Appeal

1. Carmalt testified that he held the following positions between April 1943 and December 1945:

| From | To | Employer | Position |
| --- | --- | --- | --- |
| May 1943 | May 1943 | Bell Alkali, Charleston, W. Va. | Painter |
| May 1943 | June 1943 | Barium Reduction Corp., Charleston, W. Va. | Laboratory Helper |
| July 7, 1943 | Nov. 7, 1943 | Libby-Owens-Ford, Huntington, W. Va. | Payroll Clerk |
| Nov. 1943 | Dec. 1943 | L. J. Frankel, an individual | Accountant and Store Manager |
| Jan. 1944 | Mar. 1945 | American Bridge Co., Leetsdale, Pa. | Comptometer Operator, Timekeeper |
| Mar. 1945 | June 1945 | Crucible Steel Company of America | Steel Weigher |
| July 17, 1945 | Dec. 23, 1945 | First National Bank of Pittsburgh | Transit Dep't |

of Amole's Administrators, 115 Pa. 356, 8 A. 614 (1887). See also Walker v. Mummert, 394 Pa. 146, 146 A.2d 289 (1958).

But the decision need not be rested on so technical a ground. This Court has said that delay creates a presumption of laches. Kane v. Union of Soviet Socialist Republics, 189 F.2d 303 (1951) (Kalodner, J., for the Court *en banc*). There are numerous decisions which have established that claims under the Selective Training and Service Act must be brought promptly or be barred by laches.[2] In addition, the presumption Judge Kalodner spoke of in Kane is borne out by facts here. As said above, the Veterans' Administration could not help Carmalt because of his long delay. One of the defense witnesses sought for the trial was ill with a bad heart and could not testify. Records which the company might have had concerning Carmalt had disappeared. Taking the plaintiff's own words to the effect that he is thoroughly capable, a delay of seventeen years in bringing a suit appears ridiculous. And even assuming that the Army's medical service is right that Carmalt was under a disability after 1945, there still is an unreasonable delay prior to that time concerning his claim.

There are additional reasons why the district court's result can not stand. There was evidence that the job which Carmalt held when he was working for GMAC had disappeared at the time he made application for reinstatement, because automobiles for private customers were not being produced and the production facilities were devoted to war service. Furthermore, the most the statute requires even if the man is competent to be returned to service, and his former job is available, is one year of employment.[3] The district court gave the man a judgment for the maximum wages for the position for more than the one year, and there is nothing to show that Carmalt ever would have attained the maximum wage. He was hired on probation only and there is evidence that his service was unsatisfactory.

This was a long, hard trial. The plaintiff insisted on being his own attorney and it appears from the record that the only help he would accept was from the judge's law clerk. As is not unusual when one side is badly presented and the other side is well represented, a judge's impulses are to make sure that the badly represented side gets his case adequately presented. It is hard to tell from the record when Carmalt is an advocate and when he is being a witness. Without changing physical position in the court room he shifted his role at frequent intervals. The trial judge said at one point that he needed "the patience of two Jobs and the wisdom of two Solomons" to decide the case. That he did. The whole thing was a great trial to the patience of the judge. But he did say things about the defendant and the defendant's lawyer which he should be sorry he said. "It is important that judges be ever alert to their responsibility for upholding the dignity and prestige of our judicial system." Blazina v. Bouchard, 286 F.2d 507, 512 (3d Cir. 1961). In view of the fact that the case is to be decided on grounds of abandonment and laches, there will be no detailed discussion of this point.

The judgment of the district court will be reversed and the case remanded with directions to enter judgment for the defendant. No costs.

2. See Marque v. Stern, 88 F.Supp. 306 (M.D.Pa.1950) (alternative holding) (two years); Cummings v. Hubbell, 76 F. Supp. 453 (W.D.Pa.1948) (alternative holding) (nine months); cf. Polansky v. Elastic Stop Nut Corp., 78 F.Supp. 74 (D.N.J.1948) (alternative holding) (thirteen months).

3. "Any person who is restored to a position * * * shall not be discharged from such position without cause within one year after such restoration." Act of Sept. 16, 1940, c. 720, § 8(c), 54 Stat. 890.