Robert L. GRUCA

v.

UNITED STATES STEEL CORPORATION, Appellant in No. 73-1083 and United Steelworkers of America and United Steelworkers of America, Local No. 4889 (Defendants on Cross-Claim).

Nos. 73-1303, 73-1304.

United States Court of Appeals,
Third Circuit.

Argued March 12, 1974,

Decided April 17, 1974.

David C. Toomey, Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

Robert E. Kopp, Karen K. Siegel, U. S. Dept. of Justice, Appellate Section, Civil Division, Washington, D. C. and A. E. Lawson, Pittsburgh, Pa., Irving Jaffee, Acting Asst. Atty. Gen., Robert E. J. Curran, U. S. Atty., Philadelphia, 'Pa., for appellees.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question raised by this appeal is whether a veteran's claim for legal and equitable relief under the Military Selective Service Act of 1967, 50 App. U.S.C.

§ 459,[1] is barred by laches or the Pennsylvania six year statute of limitations [2] because the veteran failed to commence his action until at least nine years had elapsed from the date his cause of action accrued. The district court viewed the claim as equitable in nature and held that the doctrine of laches governed plaintiff's demands for adjustment in job seniority dates and back pay. It concluded that plaintiff's claim was not barred by laches, granted plaintiff's motion for summary judgment, awarded damages in the amount of $4,937.66 and ordered the defendant to amend plaintiff's job service dates.[3] The employer has appealed. We reverse.

1. § 459. *Separation from service*
 *(b) Reemployment rights*
 In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—
 (B) if such position was in the employ of a private employer, such person shall—
 (i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; . . . unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so.
 . . .
 *(d) Jurisdiction of district court; United States attorney to act for claimant*
 In case any private employer fails or refuses to comply with the provisions of subsection (b), . . . [of this section], the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action: *Provided,* That any such compensation shall be in addition to and shall not be deemed to diminish any of the benefits of such provisions. The court shall order speedy hearing in any such case and shall advance it on the calendar. Upon application to the United States attorney or comparable official for the district in which such private employer maintains a place of business, by any person claiming to be entitled to the benefits of such provisions, such United States attorney or official, if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person in the amicable adjustment of the claim or in the filing of any motion, petition, or other appropriate pleading and the prosecution thereof specifically to require such employer to comply with such provisions: *Provided,* That no fees or court costs shall be taxed against any person who may apply for such benefits: *Provided further,* That only the employer shall be deemed a necessary party respondent to any such action.

2. § 31. Personal actions, when to be brought
 All actions of trespass quare clausum fregit, all actions of detinue, trover and replevin, for taking away goods and cattle, all actions upon account and upon the case (other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants), all actions of debt grounded upon any lending, or contract without specialty, all actions of debt, for arrearages of rent, except the proprietaries' quit-rents, and all actions of trespass, of assault, menace, battery, wounding and imprisonment, or any of them, which shall be sued or brought at any time after the five and twentieth day of April, which shall be in the year of our Lord one thousand seven hundred and thirteen, shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say, the said actions upon the case, other than for slander, and the said actions for account, and the said actions for trespass, debt, detinue and replevin, or goods or cattle, and the said actions of trespass quare clausum fregit within three years after the said five and twentieth day of April next, or within six years next after the cause of such actions or suit, and not after. And the said actions of trespass, of assault, menace, battery, wounding, imprisonment, or any of them, within one year next after the said five and twentieth day of April next, or within two years next after the cause of such actions or suit, and not after; and the said actions upon the case for words, within one year next after the words spoken, and not after.
 Act of March 27, 1713, 1 Sm.L. 76, § 1, 12 Pa.Stat.Anno. § 31.

3. The liability aspect was not seriously contested in the district court. It is not contested on appeal.

## I.

The material facts are not in dispute. The United States Steel Corporation employed Gruca as a general laborer in its Open Hearth Department at its Fairless Works beginning September 30, 1958. This became Gruca's Department Date for seniority purposes. Plaintiff worked continuously in that position until he left on December 8, 1960, to enter the military service. He was honorably discharged from the United States Army on December 14, 1962, returned to Pennsylvania and was reemployed by U.S. Steel on January 18, 1963. He was assigned his previous job classification of general laborer, and retained his original Department Date of September 30, 1958.

From the position of general laborer a U.S. Steel employee has the choice of following several promotional ladders. One of these ladders is Seniority Unit No. 8—Cranes. To reach the rung of craneman a general laborer must first obtain Crane Extra Board Status. This is achieved by receiving special training in crane operation and passing a test. Once an employee obtains Crane Extra Board status he is assigned a Crane Extra Board Date, which is essentially a seniority date. Therefore, employees on Crane Extra Board climb to the position of Stockyard Crane Operator, if they bid for the opening, on the basis of the earliest Crane Extra Board Date and if the physical fitness factor is relatively equal.

While Gruca was on active duty, U.S. Steel had, from time to time, advertised openings for crane operators. Four employees responded, each having Open Hearth Department Dates later than plaintiff's. They completed their training, passed the test and were assigned to the Crane Extra Board. Therefore, because of plaintiff's absence from his civilian occupation due to military obligations, employees junior to him had the chance to, and did, hold positions superior to him.

Shortly after his reemployment,[4] plaintiff learned of his plight and took the matter up with his union grievance committeeman. Specifically, he asked "whether something could be . . . done about the men moving ahead of . . . [him] to Crane Extra Board." The union representatives knew that it was company policy that "a returning veteran did not have a statutory right to any promotion for which he might have been entitled to apply had he been employed at the time that the promotion became available." Therefore, plaintiff was told that he "was only guaranteed that he would get his old job back." Because plaintiff thought "it would be useless to try to grieve this matter" and "it would do no good" he neither submitted a grievance nor complained to management.

However, Gruca remained undaunted in his career aspirations. He later signed up for training in crane operation, passed his test and was assigned a Crane Extra Board date of March 28, 1963. But, because Gruca's board date was later than the other four employees, he was not awarded the position of Stockyard Craneman until March 8, 1969.

Plaintiff did nothing to pursue his veteran's rights until, in April, 1969, he again requested the union to process a grievance on his old claim. This request came approximately seven months after Judge Sorg's decision in Foremsky v. United States Steel Corporation, 297 F. Supp. 1094 (W.D.Pa.1968), which held that a returning veteran is entitled to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in the military service if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur. The union denied his grievance request and advised him to seek assistance from the United States Department of Labor, which he did on April

---

4. Sometime in February, 1963, approximately one month after his reemployment.

18, 1969. Finally, on August 15, 1972, more than nine years after his being re-hired, and three years after he applied to the Department of Labor, plaintiff commenced this action.

Defendant does not deny that Gruca was wrongfully denied his seniority status upon his return from the military.[5] In fact, the defendant has applied the *Foremsky* rationale on a prospective basis. But, because of "extraordinary" practical problems, U.S. Steel "felt that it would be impossible to grant retroactive promotions to veterans reemployed prior to the judgment in *Foremsky*, who, like the plaintiff in this case, had not presented their claims promptly after reemployment or pursued them effectively thereafter." Thus, we are presented with the question of whether there is a legal barrier to applying the *Foremsky* doctrine in this case.

## II.

Mr. Justice Frankfurter's stark observation in Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946), is particularly applicable to veterans' claims under Section 459 of the Military Selective Service Act:

> If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive. * * * The rub comes when Congress is silent. Apart from penal enactments, Congress has usually left the limitation of time for commencing actions under national legislation to judicial implications.

Since Congress was silent concerning the limitations period for bringing veterans' claims under § 459, we are rele-gated to fashioning the appropriate remedial details. Thus, we take as our threshold inquiry whether Pennsylvania's six year statute of limitations applies as a bar to Gruca's claim seeking legal and equitable relief.

Gruca argues that the statute of limitations does not bar the demand for either legal or equitable relief. He contends that we have held that claims for relief under the Act are equitable in nature, Carmalt v. General Motors Acceptance Corporation, 302 F.2d 589 (3d Cir. 1962); that a state statute of limitations is inapplicable in an equitable action arising under a federal statute except where the state limitations statute applies to equitable remedies in like cases, Russell v. Todd, 309 U.S. 280, 60 S. Ct. 527, 84 L.Ed. 754 (1940); and that "even though the Pennsylvania statute applies in law and in equity", the "like case" requirement is not met. For its part, U.S. Steel would have us apply the statute of limitations even though the plaintiff cumulatively sought legal and equitable relief. Defendant argues that this is an issue of first impression in this court; that it was not decided in *Carmalt*; and that Russell v. Todd squarely controls. We reject the parties' "all or nothing" approach and hold that the Pennsylvania statute of limitations applies to plaintiff's claim insofar as it seeks legal relief, and that the doctrine of laches governs the demand for equitable relief.

### A.

In *Carmalt* we held that a veteran's claim for reinstatement and back pay was barred by plaintiff's laches because "there were seventeen years between his alleged claim for reemployment and the beginning of his lawsuit."[6] 302 F.2d at

---

5. Defendant concedes here, as it did in the district court, that: "Had Mr. Gruca not entered the service, had he continued to be employed, had he been physically fit, had no one senior to him applied, and had he himself applied, he would have been entitled to take training in Crane Operation before these four men, by virtue of his earlier Department Date." Appellant's brief at 7.

6. Alternatively, we held that under the facts of that case a delay of approximately two and one half years was unreasonable. We emphasized that "claims under . . . [the Military Selective Service Act] must be brought promptly or be barred by laches." 302 F.2d at 591 (Footnote omitted.).

590. Although we recognized the well-established rule that the *analogy* to the statute of limitations was helpful in determining the issue of laches, we did not address the question of the operation of the statute of limitations *qua* statute of limitations as a bar to plaintiff's claim. Thus, while *Carmalt* provides the governing precepts for the question of laches, it does not foreclose the precise inquiry we are called upon to make here.

Mr. Justice Stone's opinion in Russell v. Todd, *supra*, serves as the springboard for our analysis. There the Court was called upon to decide whether New York's three year statute of limitations would apply to an action brought by the creditors of an insolvent bank against the bank's shareholders under the Federal Farm Loan Act. The Court reasoned that the claim was brought "exclusively in equity to enforce rights cognizable only in equity", that it was not exercised in aid or support of a legal right, and that the state statute applied only to legal remedies. Specifically, the Court emphasized:

> [W]here the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, state statutes of limitations barring actions at law are inapplicable, and in the absence of any state statute barring the equitable remedy in like cases, the federal court is remitted to and applies the doctrine of laches as controlling.

309 U.S. at 289, 60 S.Ct. at 532. Since plaintiffs' claim met the necessary criteria, the Court held that the doctrine of laches, and not the statute of limitations, governed the action.

 Unlike the claim in Russell v. Todd, plaintiff's claim is not exclusively within the equity jurisdiction of the court. A veteran's arsenal of remedies under § 459 is not limited solely to those which are equitable in nature. By its very terms § 459 provides the district court with power "to require . . . [the] employer to comply with . . . [certain provisions of the section] and to compensate such person for any loss of wages or benefits . . ." Thus, a veteran can seek legal or equitable relief, or both. Since plaintiff's claim cannot be characterized as being exclusively in equity to enforce rights cognizable only in equity, the state statute of limitations controls plaintiff's claim insofar as it seeks legal relief.[7] *See* Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S. Ct. 894, 8 L.Ed.2d 44 (1962), Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

### B.

But that does not end our inquiry, for we must also decide whether the limitations of actions statute governs plaintiff's demand for equitable relief as well. In the absence of any statute of limitations made applicable to similar equitable claims, equity has provided its own rule of limitations through the use of the doctrine of laches. "Even though there is no state statute applicable to similar equitable demands, when the jurisdiction of the federal court is concurrent with that at law . . . equity will withhold its remedy if the legal right is barred by the local statute of limitations." Russell v. Todd, *supra*, 309 U.S. at 289, 60 S.Ct. at 532.

 U.S. Steel argues that since plaintiff's legal and equitable remedies are predicated upon the same factual complex, they are "concurrent". Alternatively, it mounts the argument that because Pennsylvania applies its statute of limitations to equitable actions seeking adjustments in seniority status, we must apply it here. First, although plaintiff's demand for legal and equitable relief arises out of the same factual complex, it does not necessarily follow that the jurisdiction of equity is "con-

---

7. The parties do not contend that the statute of any state other than Pennsylvania should be applied. Indeed, once it is concluded that the statute of limitations applies to the claim seeking legal relief "it is federal policy to adopt the *local* law of limitation." Holmberg v. Armbrecht, *supra*, 327 U.S. at 395, 66 S.Ct. at 584. (Emphasis supplied.)

current" with that of law, as that word is used in Russell v. Todd. By seeking to rely on the facts giving rise to plaintiff's claim rather than focusing on the nature of the relief sought, defendant's argument misses the mark of the issue before us. Although equity jurisdiction is concurrent with that at law when a remedy is available in both legal and equitable forms, the Supreme Court has made it clear that "in the federal courts equity has always acted only when legal remedies were inadequate . . ." and "the expansion of adequate legal remedies provided by the Declaratory Judgment Act and the Federal Rules necessarily affects the scope of equity." Beacon Theatres, Inc. v. Westover, *supra,* 359 U.S. at 509, 79 S.Ct. at 956. (Footnote omitted.) Here, plaintiff seeks to have his job seniority dates changed. An order to change the dates cannot be achieved by a remedy at law. It requires a decree in equity. Thus, jurisdiction is not concurrent.

U.S. Steel also contends that the court in Madera v. Monongahela Ry. Co., 356 Pa. 460, 52 A.2d 329 (1947), specifically applied the six year statute to an action seeking seniority status adjustments, a "like case," under the teaching of Russell v. Todd, *supra.* There plaintiff commenced an action for restoration of seniority rights and for an accounting. The defendant pleaded that "plaintiff's claim was barred by laches." The court adopted the opinion of the trial court as to that issue:

> "Finally, we are of [the] opinion that the plaintiff's claim is barred by laches. As seniority rights arise only out of contract, it is appropriate that the statute of limitations should be applied by way of analogy to actions at law . . . [Plaintiff's] delay in instituting her action has been altogether unreasonable. . . . [T]he Company has employed and paid many others to fill positions to which seniority might have entitled her, and for the court to reinstate her now . . . would result in great pecuniary loss and damage to the Company

that would have been avoided had she prosecuted her claim with diligence." 52 A.2d at 332. The company's argument discloses a confusion between application of the limitations statute *qua* statute with a consideration of it by way of analogy in the application of the doctrine of laches.

Insofar as predicting how the Pennsylvania courts would react is germane to our inquiry, *see, e. g.,* Quinones v. United States, 492 F.2d 1269, at p. 1273 (3d Cir. 1974), we believe that Pennsylvania will continue to analogize its six year contract limitations statute in applying the doctrine of laches in those cases in which the equity side of their courts is invoked to obtain an adjustment in seniority dates. Thus, in the posture of this case, we too must be unerringly led to apply the laches doctrine to plaintiff's claim for equitable relief.

### III.

Laches conceptualizes the inequity which may inhere when a stale claim is permitted to be enforced. By its very nature the doctrine addresses itself to the sound discretion of the trial judge. Therefore, absent an abuse of discretion, we will not disturb the court's determination. Burke v. Gateway Clipper, Inc., 441 F.2d 946, 949 (3d Cir. 1971). "If the district court has applied the correct criteria to the facts of the case, then, it is fair to say that we will ordinarily defer to its exercise of discretion." Katz v. Carte Blanche Corporation, 496 F.2d 747, at p. 756 (3d Cir., 1974) (In banc).

Laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. Kane v. Union of Soviet Socialist Republics, 189 F.2d 303 (3d Cir. 1951) (In banc). In fixing the time limitation which will give rise to a rebuttable presumption of inexcusable delay and prejudice, this court has previously applied the analogy of the state statute of limitations. In so doing, however, we have consistently stressed that the state

statute of limitations serves only as an analogy and not as a rule, because laches focuses on the excusability of the delay and the prejudice to the defendant, not the length of the delay *per se.* Burke v. Gateway Clipper, Inc., *supra*, 441 F.2d at 949; Carmalt v. G.M.A.C., *supra*, 302 F.2d at 590; Kane v. U.S.S.R., *supra* 189 F.2d at 305–306. The length of delay, while not mandating the outcome, does control burdens of proof. If a plaintiff sleeps on his rights for a period of time greater than the applicable statute of limitations, then "the plaintiff [must] . . . come forward and prove that his delay was excusable and that it did not . . . prejudice the defendant." Burke v. Gateway Clipper, *supra*, 441 F.2d at 949.[8] Applying these well-established principles to this factual complex, we hold that the court abused its discretion in concluding that plaintiff's claim was not barred by laches.

#### A.

 Our starting point is an inquiry into the existence of inexcusable delay. Here, plaintiff was rehired by U.S. Steel on January 18, 1963. He offered no proof of any deception or promise, or any other valid reason for postponing the running of the statute of limitations or the period for delay. Thus, for purposes of application of the statute of limitations and laches, the time began to run upon reemployment, January 18, 1963. Instead of commencing an action in the district court, plaintiff did nothing. He waited in excess of six years before he even reasserted his claim to the Union in April, 1969. Not until August 15, 1972, was an action filed.[9] Applying the Pennsylvania six year statute by analogy, a presumption of inexcusable delay and prejudice arose. Thus, it became plaintiff's burden to come forward with evidence to rebut the presumption. The district court found Whitmore v. Norfolk & Western Ry. Co., 73 LRRM 2001 (N.D. Ohio 1969) to be persuasive and concluded that the delay was excusable because the violation was not flagrant and because the defendant "by its own actions, made a substantial contribution to the delay at issue."

 Clarity of the violation or uncertainty of the law are not factors which operate to excuse a party's delay. It is the duty of a veteran to promptly pursue his rights in court.[10] Carmalt v. G.M.A.C., *supra*, 302 F.2d at 591. The promptness which is demanded is not a naked assertion of a claim but the commencement of an action by the filing of a complaint. One cannot sit back, wait years for someone else to act as his stalking horse, and then ride the coattails of a favorable judicial decision irrespective of the delay involved. This is exactly what plaintiff has done here.

 The court also abused its discretion when it concluded that the defendant substantially contributed to the delay. Plaintiff presented no evidence that he was misled by concealment, misrepresentation, unfulfilled promises or any other inequitable conduct on the

---

8. We hasten to add that reference to a comparable statute of limitations does not determine the minimum limits of the delay necessary to invoke the first element of the laches doctrine. In given circumstances, a shorter time period may be sufficient to give rise to inexcusable delay and prejudice to the defendant, see, Carmalt v. G.M.A.C., *supra*, and footnote 6, *supra*, in which case the burden would be on the defendant to prove each of the elements.

9. On April 18, 1969, plaintiff submitted his application for assistance to the Department of Labor. However, not until September 30, 1971, did plaintiff request the Department of Justice to intercede in his behalf by commencing an action in district court. Plaintiff argues that this delay is attributable to the government, not him, and therefore it is excusable. But the brute fact is that the record does not support the conclusion that the delay was attributable to the government. All the district court had before it were the above mentioned dates, not the reasons for the time lag. Therefore, even if we were prepared to hold that the delay of the government acting purely on behalf of the veteran was excusable, plaintiff, who had the burden to come forward and prove "excusability" once the presumption arose, did not do so.

10. *See,* footnote 6, *supra.*

part of U.S. Steel. In the words of the district court: "the defendant . . . formulated and adhered to a policy which was eventually determined by the courts to be erroneous." By his uncontradicted affidavit, George G. Stout [11] stated that the company's legal policy was based upon a good faith understanding of the Act and cases interpreting it. Plaintiff was informed of the company's policy in February, 1963. Plaintiff admits that he did not bring a claim because he felt that it would be "useless". In no way can the defendant's actions constitute a substantial contribution to plaintiff's delay. We realize that Whitmore v. Norfolk & Western Ry. Co., *supra*, can be read as disagreeing with the conclusion we reach here. To the extent that it does, we decline to follow it.

### B.

 A determination of inexcusable delay does not end the matter. To invoke the laches doctrine, prejudice to the defendant because of the delay must also be shown. Because the plaintiff's delay was in excess of the analogized statute of limitations, prejudice will be presumed. Burke v. Gateway Clipper, Inc., *supra*. Plaintiff offered no evidence to rebut this presumption. By contrast, defendant offered evidence that it had paid other employees wages to perform the work that plaintiff would have accomplished. By sleeping on his rights plaintiff permitted the defendant to unnecessarily spend money in excess of nine years. The district court rejected this factor as an element of prejudice, viewing it as being created by the defendant's own doing. We disagree.

Pecuniary loss is a very real factor to be considered in determining whether prejudice to the defendant exists. More important is the domino effect precipitated by changing plaintiff's job service dates. By his affidavit Mr. Stout stated that "retroactive promotions . . . would have caused extraordinary person-

nel disruptions, and would have impaired efficiency in varying degrees, at all employing locations." While this statement deals generally with the overall effect on the company, plaintiff has offered *no proof that this "bumping" effect would not prejudice the efficiency and operation of U.S. Steel in this case. Therefore, we conclude that the district court abused its discretion in concluding that plaintiff had rebutted the presumption of prejudice to the defendant.*

We have carefully considered all the contentions raised by the parties. The judgment of the district court will be reversed and the complaint dismissed.

---

11. Stout is an attorney specializing in the field of Labor Law within the Law Depart-

ment of the United States Steel Corporation. (Appendix at 88a).