Peter M. HASSLER and Genevieve L.
Hassler, a/k/a Genevieve
Lenoir, Plaintiffs,

v.

Angel, Charles, George, and Andrew
ASSIMOS, Defendants.

Civ.A.No. 84–135CMW.

United States District Court,
D. Delaware.

March 29, 1985.

Arthur J. Sullivan, c/o Victor F. Battaglia, of Biggs & Battaglia, Wilmington, Del., for plaintiffs.

Gregg E. Wilson, of Wilmington, Del., for defendants.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge.

This appeal[1] represents the third occasion that a Court for the District Court of Delaware has had to consider the scope of a debtor's right under § 522(f) of the Bankruptcy Reform Act of 1978, Pub.L.No. 95–598 § 522(f), 92 Stat. 2549 (1978),[2] to avoid a judicial lien after the debtor's discharge in bankruptcy. In *Noble v. Yingling* (hereinafter "Noble I"), 29 B.R. 998 (D.Del. 1983), the District Court reversed the decision of the bankruptcy court. The bankruptcy court had held that an adversary proceeding to avoid a judicial lien pursuant to § 522(f) must be filed prior to the debtor's discharge. While rejecting the bankruptcy court's construction of § 522(f), the District Court recognized that the debtor's failure to initiate an avoidance proceeding may in some situations give rise to a defense based on laches.

On remand, the bankruptcy court, after making certain findings of facts as requested by Judge Schwartz in *Noble I,* held that the debtor's knowing failure to file an

---

1. While this appeal was under advisement, plaintiffs' attorney was temporarily suspended from practice before the District Court of Delaware. Since the matter had been briefed and only awaited decision, the Court felt the change in Mr. Sullivan's status should not affect consideration of this appeal.

2. Section 522(f) provides in pertinent part:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(1) a judicial lien; ....

11 U.S.C. § 522(f).

avoidance prior to discharge precluded a debtor from seeking an avoidance after discharge against a creditor who had acted in good faith. *See Noble v. Yingling* (hereinafter "Noble II"), 37 B.R. 647, 649–50 (D.Del.1984) (district court's discussion of bankruptcy court's decision after remand in *Noble I*). In reversing the decision of the bankruptcy court, Judge Schwartz announced the following rule: "[P]ost-discharge lien avoidance will be barred only if the debtor's delay has resulted in such prejudice as to warrant barring the lien avoidance relief." *Noble II, supra,* 37 B.R. at 650; *accord, e.g., In re Barnett,* 30 B.R. 119, 122 (Bankr.M.D.Ala.1983).

The present action was before the bankruptcy court while *Noble II* was still on appeal. The bankruptcy judge held that plaintiff-debtors' (hereinafter "debtors'") delay in seeking to avoid the defendant-creditors' (hereinafter "creditors'") lien was inexcusable and that therefore, laches applied, barring debtors' motion. *See* Defendants' Answering Brief, Exhibits 1, 5 (Docket Item ("D.I.") 6). Because neither the record below nor the briefs on appeal disclose any basis from which laches can be inferred, even viewing the record in the light most favorable to the party asserting laches, the decision of the bankruptcy court must be reversed and remanded.

BACKGROUND FACTS

On February 8, 1980, the creditors obtained a judgment against the debtors in the amount of $75,956.00 in the Superior Court of the State of Delaware. The judgment was duly recorded, creating a judicial lien on the debtors' real property. *See* 10 *Del.C.* §§ 4701–4737.

On June 4, 1981, the debtors filed a petition in bankruptcy pursuant to 11 U.S.C. Chapter 7. The debtors' petition listed the creditors' outstanding judgment. The debtors' petition also described jointly owned real estate with a market value of $53,000 and two mortgages with a total balance due of $44,253.43. The debtors claimed the $8,746.57 in equity as part of their real estate exemption.

A meeting of creditors was held on June 29, 1981, at which counsel to the judgment creditors in this appeal were present. The meeting's notice had indicated that the exemptions would be granted if no objections were filed within 15 days of the meeting date. At the meeting, the Trustee indicated his intention to abandon the property in question.

Discharge in bankruptcy occurred on September 3, 1981. The Trustee in Bankruptcy, however, did not file the required "Notice of Abandonment" with respect to the debtors' real estate until December 7, 1982, more than a year after the discharge. The abandonment did not take effect until January 7, 1983.

On December 29, 1983, over two years after debtors were discharged in bankruptcy and just less than a year after formal abandonment of the real estate in question, the debtors filed a motion for an order to avoid the Assimos' judgment lien.[3]

The judgment creditors advanced two objections to debtors' motion. The creditors maintained the motion was untimely. Moreover, they claimed that the intended sale value of the real estate exceeded the debtors' property valuation as contained in their bankruptcy petition, and consequently, the debtors' equity in the real estate exceeded any exemptions they were entitled to claim. The creditors had not undertaken any efforts to enforce their lien after the debtors' discharge in bankruptcy.

The bankruptcy judge, invoking the doctrine of laches, denied debtors' motion from the bench as untimely and plaintiffs appealed.

---

**3.** While some courts have held that the better practice, in initiating an adversarial proceeding to avoid a lien, is to file a complaint, *see Matter of Conley,* 17 B.R. 387, 389 (Bankr.S.D. Ohio 1982) (relying on Fed.R.Bankr.P. 701(2), 703), the use of a motion to initiate the proceedings is not deemed a serious defect when adverse parties have proper notice. *Id.* The local procedure of the Bankruptcy Court for the District of Delaware clearly provides for avoidance of liens through motions properly served on adverse parties. *See* General Order #7 (Bankr.D.Del., August 1, 1983).

DISCUSSION

■■■ The sole issue on appeal is whether the bankruptcy judge erred in denying debtors' motion on grounds of laches. Three standards of appellate review are present whenever a district court reviews an equitable decision of the bankruptcy court, which functions, in such matters, as the trier of fact. Review of factual findings is governed by the clearly erroneous standard. *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983). Matters regarding the length of delay or the existence of consequences and circumstances that are prejudicial, are questions of fact.[4] *Churma v. United States Steel Corp.*, 514 F.2d 589, 593 (3d Cir.1975). The conclusion, however, that a delay is inexcusable or that a party has suffered prejudice involve the application of legal standards over which this Court's review is plenary. *See, id.; E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, (hereinafter "A & P"), 735 F.2d 69, 81, 84 (3d Cir.), *cert. dismissed* —— U.S. ——, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984). If a sufficient factual basis exists for finding the requisite elements of laches, then a decision by the bankruptcy court barring a debtor from further avoiding any judicial liens is subject to scrutiny by this Court only for an abuse of the bankruptcy court's

equitable discretion. *See A & P, supra*, 735 F.2d at 81; *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974).

■■■ Here, the bankruptcy judge's invocation of the doctrine of laches represents an ultimate legal conclusion without any of the requisite subordinate findings to support such a conclusion.[5] "The elements of the equitable defense of laches are '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *See A & P, supra*, 735 F.2d at 69 (*quoting Costello v. United States*, 365 U.S. 265, 292, 81 S.Ct. 534, 543, 5 L.Ed.2d 551, 555 (1961)). This proposition is true whether the issue is discrimination, as in *A & P*, or bankruptcy, as here.

■■■ The statute of limitations with respect to the underlying claim governs the allocation of burden of proof with respect to these elements between the party seeking to assert laches and the other party. *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1259 (3d Cir.1974). Because there is no express statutory limitation period that bars lien avoidance proceedings brought under § 522(f),[6] *Noble I, supra*, 29

---

**4.** The record presently before the Court does not disclose disputes as to facts that are relevant to this appeal.

**5.** The bankruptcy court's failure to make detailed findings of law and fact, alone, precludes an affirmance by this Court because of its inability to ascertain from the record the basis for the bankruptcy court's decision. Under the circumstances, this Court would be obligated at least to vacate and remand this matter to the bankruptcy court "to more fully explain its findings of fact, and to support them with adequate references to the evidence, and a discussion of the applicable legal precepts." *In re Morrissey*, 717 F.2d 100, 103 (3d Cir.1983). The Court is sympathetic to the plight of overburdened bankruptcy judges. Nevertheless, the appellate function of district courts, in reviewing decisions of bankruptcy courts, is undermined unless the basis, both factual and legal, for a decision is apparent from the record. This requirement does not entail a written decision in every matter, but rather, merely a brief statement from the bench setting forth the evidentiary basis for findings of fact and identifying the requisite

legal conclusions that support the bankruptcy court's decision.

**6.** "Congress intended that any time limit would be imposed by the Rules of Bankruptcy Procedure or by Local Bankruptcy Rules." *Noble I, supra*, 29 B.R. at 1001–02 (discussing H.R. Rep.No. 595, 95th Cong. 1st Sess. 293, 297 (1977), *reprinted in* U.S. Code Cong. & Ad. News [1978], 5787, 6250, 6254. The Court expresses no view on the question of whether a debtor seeking to avoid a lien beyond a reasonable period provided by the Local Bankruptcy Rules would be sufficient to shift the burden of disproving laches onto plaintiff.

If Congress has not provided an applicable statute of limitations, federal courts must look to the limitation period of the most analogous cause of action under the law of the forum state. *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *see also Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir.1974) (en banc). Where no analogous state cause of action exists or the state statute of limitations is inconsistent with important federal substantive policies, then a federal

B.R. at 1001, the burden of establishing both inexcusable delay and prejudice was on the judgment creditor. *A & P, supra,* 735 F.2d at 80.

This Court cannot ascertain whether defendants have carried their evidentiary burden with respect to the issues of inexcusability and prejudice based on the record currently before the Court and in view of the bankruptcy court's failure to offer findings of fact. Indeed, it appears from the record that the bankruptcy judge considered matters arising solely from the procedural history of the case rather than conducting a separate evidentiary proceeding into the excusability or inexcusability of debtors' delay and any prejudice suffered by the creditors.

The bankruptcy judge should resolve a number of factual issues as a predicate to determining whether the party asserting laches has established the requisite elements of the defense. Judge Schwartz has identified a non-exhaustive list of seven equitable factors for consideration by the bankruptcy judge:

1) vigor with which the judgment creditors pursued the debtors prior to the filing of the bankruptcy petition, 2) communication of positions by and between debtors and judgment creditors after filing of the petition and prior to discharge, 3) motivating cause of failure to file lien avoidance complaint prior to discharge, 4) length of time between discharge and filing of lien avoidance complaint, 5) reasons for the delay in filing of lien avoidance complaint, 6) prejudice to the judgment creditors, and 7) good faith, or lack thereof, of the creditors.

*Noble I, supra,* 29 B.R. at 1003.

 Another factor that bankruptcy courts may wish to consider is the creditors' reason for delay in seeking to enforce their lien against the debtors' property. Arguably, this eighth factor is merely an extension of the inquiry into the creditors' good faith as provided in the seventh factor. An explicit consideration of a creditor's post-discharge conduct is likely to produce a more detailed examination of creditor's conduct in determining whether the creditor is entitled to equitable protection.[7]

 Although the bankruptcy court did not address the issue of inexcusability or prejudice, the merits of the appeal can be resolved solely as a matter of law. The

---

court may look to analogous federal statutes of limitation. *See DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983); *see generally Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2454–55, 53 L.Ed.2d 402 (1977) (discussing need to consider federal interest in creating a cause of action before borrowing analogous state statute of limitations).

A party seeking to invoke the defense of laches in the absence of an express federal statute of limitations bears the burden in establishing that a particular state statute of limitations is controlling in the federal action. *See Stevens v. Tennessee Valley Authority,* 712 F.2d 1047, 1050–51 (6th Cir.1983). Here, the defendants have failed to argue that the court should look to a specific state statute of limitations and thus, have waived any right to claim that the burden of proof with respect to laches should rest on plaintiffs.

7. The importance of this so-called eighth factor is underscored by the bankruptcy judge's remarks from the bench: "The creditor is not under any duty to take action against the collateral." Defendants' Opening Brief, Exhibits 1, 4 (D.I. 6). Admittedly a judgment creditor is under no legal duty to enforce his lien against the collateral in the sense that his lien is subject to renewal through procurement of a writ of scire facias and thus, he never risks forfeiture of his lien through inaction. The bankruptcy judge's statement, however, is misleading insofar as it suggests that a creditor's duty in equity to take action against a debtor's collateral is substantially less, *ab initio,* than debtor's duty in equity to avoid creditor's lien. When a creditor seeks to invoke the equitable defense of laches, his actions should be evaluated from the perspective of equity rather than law. Thus, a judgment creditor cannot sit back and take no action against a debtor's collateral in hopes of invoking the defense of laches against the debtor for the debtor's failure to seek a timely avoidance of the creditor's lien.

There is, of course, some distinction between the respective duties of creditors and debtors. The strong policy reasons that argue for some eventual finality to bankruptcy proceedings, *see Noble I,* 29 B.R. at 1001, would also seem to argue for some obligation on the part of debtors to initiate an avoidance proceeding at some reasonable point after discharge and abandonment for purposes of attaining finality.

defense of laches will lie only if the party asserting the defense can offer a conceivable basis for claiming prejudice as a result of his opponent's inexcusable delay.[8] In this context, prejudice exists whenever a creditor's position, in terms of the legal rights he possesses against the debtor, is unfairly compromised relative to the position the creditor would have enjoyed had the debtor not delayed in seeking to avoid the creditor's lien. "Delay in filing an avoidance action is not in and of itself prejudicial." *Noble II, supra,* 37 B.R. at 651.[9]

■ The judgment creditors have advanced two reasons for claiming prejudice. First, they can no longer, or at least not easily, ascertain the value of the property at the time debtors' declared the value of their property. Defendants' Answering Brief 6 (D.I. 6). Secondly, the creditors allege that the debtors' equity in the property exceeded the value of the exemptions the debtors were entitled to claim. Because the creditors were free to challenge the valuation of the property prior to discharge and the Trustee's abandonment of the real estate, the prejudice they allege must be attributed to their own lack of diligence rather than to debtors' delay.[10] The second factor cited by creditors is simply beside the point with respect to laches: laches is not a proper defense with which to test the validity of the original exemptions claimed by the debtors.

Because, as a matter of law, defendants failed to present any foundation for their claim of prejudice, their objection to the debtors' motion or ground of laches must be rejected. Accordingly, the decision of the bankruptcy court is reversed, and remanded for a consideration of the merits of defendants' objections to plaintiffs' motion on grounds other than laches.

---

8. The bankruptcy court's holding that laches should bar debtors from obtaining a lien avoidance presupposes the debtors' delay in seeking the avoidance was inexcusable. Any inexcusability, in turn, would appear to rest solely on the length of time that had elapsed between the discharge and debtors' motion. The issue of the timeliness of debtors' motion is not free from uncertainty because the real estate in question was not formally abandoned by the trustee until over a year after debtors' discharge. The bankruptcy court expressed no opinion whether, as a matter of law, delay in initiating proceedings to avoid a lien should be measured from the date of discharge or the date of abandonment. This Court will reserve its opinion on that question because it was not briefed by the parties and because this matter is easily disposed of on the issue of prejudice.

9. The defendants argue that this case is distinguishable from *Noble II* because there, "the debtors did not have actual knowledge of the lien, while, in the present case, both the debtors and their attorney had actual knowledge of the judicial lien." Defendants' Opening Brief 5 (D.I. 6). This distinction is entirely unpersuasive in view of the district court's affirmation of the bankruptcy court's finding in *Noble II* that the debtor should be treated as having constructive knowledge of the judgment lien against them. *Noble II, supra,* 37 B.R. at 650.

10. One of the few significant facts apparent from the record is that the judgment creditors in this case had notice of debtors' valuation of the real estate prior to the Trustee's abandonment and the debtors' discharge.