Karen A. **PETRY, Administratrix of the Estate of Robert E. Petry, deceased, Plaintiff,**

v.

**DELMARVA POWER & LIGHT COMPANY, Defendant.**

**Civ. A. No. 85–134 MMS.**

United States District Court, D. Delaware.

April 11, 1986.

Richard A. Zappa, and William D. Bubb, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Somers S. Price, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

This action involves a claim for additional insurance benefits by plaintiff as the beneficiary of the life-insurance policy issued by her husband's employer, Delmarva Power. Plaintiff alleges that her late husband, a former National Guardsman, was denied benefits properly his under the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("the Act"), 38 U.S.C. §§ 2021–26. The matter is before the Court on cross-motions for summary judgment. For the reasons given below, the Court will deny plaintiff's motion and grant defendant's motion.

### Facts

Robert Petry, plaintiff's decedent, worked for Delmarva Power ("Delmarva" or "the Company") from 1965 until his death on March 23, 1981. At the time of his death, Mr. Petry was covered by Delmarva's group life-insurance policy. The Company's insurer provided coverage to Delmarva employees based on an employee's earnings from Delmarva for a prior year, adjusted to include extraordinary income such as overtime or moving expenses. Delmarva does not calculate as earnings for life-insurance purposes the sum an employee would have earned during an unpaid leave. Affidavit of J.A. Warriner, Dkt. 19, ¶ 6.

In 1979, the year on which the life-insurance calculations are based, Mr. Petry earned from Delmarva $19,655.77, which translated into $60,000 of life-insurance coverage. During 1979, Delmarva granted Mr. Petry two weeks' unpaid leave for training in the Delaware Air National Guard. Mr. Petry was not credited with earnings for those two weeks for life-insurance purposes.

Around mid-April 1981, a few weeks after Mr. Petry's death, plaintiff received from Delmarva's insurer a check for $60,000 plus interest, representing her husband's life-insurance benefits. On May 11, 1982, plaintiff first asserted to Delmarva that she should have received more money under her husband's policy. According to plaintiff, Mr. Petry's 1979 Delmarva salary, for purposes of determining his life-insurance benefits, should have been calculated as though he had worked at Delmarva during the two weeks he spent on unpaid leave with the Delaware Air National Guard in 1979. Plaintiff alleges that Delmarva's failure to credit Mr. Petry with earnings for these two weeks violates 38 U.S.C. § 2021–26 (1982).

Jurisdiction of this Court is properly invoked under 38 U.S.C. § 2022, for the alleged failure by Delmarva to comply with 38 U.S.C. §§ 2021(b)(3) and 2024.

### Analysis

1. *Statutory Provisions*

Two sections of the Act are relevant to this case. Section 2021(b)(3) of title 38 reads:

Any person who holds a position described in clause ... (B) of subsection (a) of this section shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

38 U.S.C. § 2021(b)(3) (1982). Clause (B) of subsection (a) describes "position" as "in the employ of a State, or political subdivi-

sion thereof, or a private person." 38 U.S.C. § 2021(a)(B). Members of the National Guard "are equally entitled to the protection of 38 U.S.C. § 2021(b)(3)." *Monroe v. Standard Oil Co.*, 452 U.S. 549, 552 n. 2, 101 S.Ct. 2510, 2512 n. 2, 69 L.Ed.2d 226 (1981) (citing S.Rep. No. 1477, 90th Cong., 2d Sess. 1, 5 (1968); H.R.Rep. No. 1303, 90th Cong., 2d Sess. 3, 6 (1968), U.S. Code Cong. & Admin.News 1968, p. 3421).

Subsection 2024(d) provides, in part,

.... Upon [an] employee's release from a period of ... active duty for training or inactive duty training ... such employee shall be permitted to return to such employee's position with such seniority, status, pay, and vacation as such employee would have had if such employee had not been absent for such purpose....

38 U.S.C. § 2024(d). This subsection applies to training by members of the National Guard. 38 U.S.C. § 2024(f).

Plaintiff's decedent, a member of the Delaware Air National Guard who held a position in the employ of a private employer as described by Section 2021(a)(B), is therefore entitled to the protection of Sections 2021(b)(3) and 2024(d).

### 2. *The Defense of Laches*

■ Defendant argues first that plaintiff's claim is barred by the doctrine of laches. As defendant recognizes, claims under 38 U.S.C. § 2021 *et seq.* are not governed by state statutes of limitations. 38 U.S.C. § 2022. A number of courts have applied the doctrine of laches to veterans' claims, however. *See, e.g., Lingenfelter v. Keystone Consol. Indus., Inc.*, 691 F.2d 339 (7th Cir.1982) (per curiam); *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); *Gruca v. United States Steel Corp.*, 495 F.2d 1252 (3d Cir.1974).

Laches consists of two elements: inexcusable delay in bringing suit and resulting prejudice to the defendant. *Gruca*, 495 F.2d at 1258. Defendant cites *Gruca* for

the proposition that where, as here, plaintiff brings suit after the "analogous" state statute of limitations has expired, the burden shifts to plaintiff to prove her delay was excusable and did not prejudice the plaintiff. *See id.* at 1259.[1]

This reliance on *Gruca* is misplaced. The *Gruca* court held that a state statute of limitations was an "analogous" limitations period for a veteran's claim for reemployment rights under the Military Selective Service Act of 1967, 50 U.S.C. § 459. *Gruca*, 495 F.2d at 1260. The Act as then in force was silent as to a statute of limitations. *Id.* at 1254 n. 1 & 1256. In its subsequent recodification as the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 *et seq.*, however, the Act was amended to provide that no state statute of limitations should apply. *See* 38 U.S.C. § 2022. To continue to use a state statute of limitations by analogy when applying to this Act the doctrine of laches would thwart the intent of Congress that no state statute should limit a veteran's federal rights. Therefore, the burden remains on defendant to show that plaintiff's delay is not only inexcusable, but also prejudicial to the defendant.

It is unnecessary here to decide whether plaintiff's four-year delay is inexcusable, for defendant has failed to show the delay has prejudiced it in any way. Defendant claims prejudice because Mr. Petry has died, the insurance-benefits coordinator employed by defendant at the time of Mr. Petry's death has himself died, and plaintiff's memory of receiving the insurance benefits has faded. Delmarva thus asserts it is deprived of three potential fact witnesses. However, Delmarva has failed to show that any of these witnesses would testify to facts that could establish prejudice. Despite defendant's assertion to the contrary, its claims of prejudice are baseless.

Because the doctrine of laches does not bar plaintiff's claim, the Court will proceed to the merits.

---

**1.** Defendant asserts the one-year limitation of 10 Del.C.Ann. § 8111 is the "analogous" statute of  limitations.

### 3. Whether Life-Insurance Benefits are a "Perquisite of Seniority"

Plaintiff argues life-insurance benefits are a "perquisite of seniority" which are entitled to protection under the Act. There being no cases directly on point, plaintiff relies chiefly on the analysis in *Alabama Power Co. v. Davis*, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977), which dealt with the question whether a returning veteran was entitled to pension credit for time spent in the military. In examining whether this particular benefit "is an aspect of the 'seniority' which the Act protects," *id.* at 585, 97 S.Ct. at 2005, the Court set up a two-pronged test.

"If the benefit would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service, it is a "perquisite of seniority." If, on the other hand, the veteran's right to the benefit at the time he entered the military was subject to a significant contingency, or if the benefit is in the nature of short-term compensation for services rendered, it is not an aspect of seniority...."

431 U.S. at 589, 97 S.Ct. at 2007.

The Court in *Alabama Power* concluded that "[r]espondent's work history both before and after his military tour of duty demonstrates that if he had not entered the military, he would almost certainly have accumulated accredited service for th[at] period.... Unpredictable occurrences might have intervened, but 'we cannot assume that Congress intended possibilities of this sort to defeat the veteran's seniority rights.'" *Id.* at 591–92, 97 S.Ct. at 2008 (quoting *Tilton v. Missouri Pac. R.R.*, 376 U.S. 169, 181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590 (1964)).

The Court also found that, while "pension payments have some resemblance to compensation for work performed," *id.* at 592, 97 S.Ct. at 2009, "the 'true nature' of the pension payment is a reward for length of service." *Id.* at 593, 97 S.Ct. at 2009. Several factors led the Court to this conclusion: 1) pension rights vested in the employee only after a number of years in the company's employ; 2) the payment to the employee depends directly on the length of service; 3) all pension benefits are adjusted periodically to compensate for increase in living costs. *Id.* at 593–94, 97 S.Ct. at 2009–10. Moreover, by rewarding employees for continuous service to the company, a pension plan promoted a stable workforce; and, by providing financial security, encourages older workers to retire and make way for younger workers. *Id.* at 594, 97 S.Ct. at 2009. The Court therefore held that pension rights were a "perquisite of seniority" and that the respondent was entitled to pension credit for time spent in the military.

The life-insurance policy held by plaintiff's decedent meets the first prong of the *Alabama Power* test. Because plaintiff's decedent was in the employ of defendant both immediately before and after his two-week stint in the National Guard in 1979, it is reasonably certain that plaintiff would have worked for Delmarva for those two weeks; and, therefore, his salary would have been increased by two weeks' earnings.

The second prong of the *Alabama Power* test is not met, however. Plaintiff argues the Delmarva life-insurance policy "rewards length of service by increasing the death benefit amount over time. Actual earnings provide a reasonable measurement to institute this plan, because it is assumed that an employee's income will increase along with length of service." Plaintiff's Opening Brief, Dkt. 24, at 14–15. Plaintiff provides not a shred of evidence to support her sweeping assertion that Delmarva compensated its employees commensurate with their length of service. To the contrary, the life-insurance policy benefits are tied directly to an employee's compensation for a particular year. A newly hired, highly compensated employee at Delmarva would be entitled to greater life-insurance benefits than a long-term employee whose annual wage was lower for the same year. Indeed, the insurance level is not tied to an employee's base salary but includes all compensation, including overtime wages.

There are certain additional features of the Delmarva life-insurance benefits, but these do not make the plan fit the Court's rubric of "a reward for length of service." For example, new management employees are entitled to coverage commencing immediately with their first day of work. Affidavit of J. A Warriner, Dkt. 19, ¶ 2. Coverage is held constant for employees whose earnings decline. *Id.* Retirees do not lose coverage completely, but retain coverage at levels reduced progressively each year of retirement although never less than $20,000. *Id.* Terminated employees lose their insurance coverage thirty days after termination, even if they had vested retirement rights. *Id.* To a certain extent, then, life-insurance benefits are keyed to continued employment, not just earnings: certain favored employee classes—new management hires, continuing employees whose earnings drop, and retirees—receive life-insurance benefits *not* directly tied to their compensation. Similarly, terminated employees lose their benefits so quickly as to make it appear that the life-insurance benefits are tied to continued employment. These features make the life-insurance benefits appear to be "in the nature of a short-term compensation for services rendered." 431 U.S. at 589, 97 S.Ct. at 2007.

Thus, *Alabama Power* fails to support plaintiff's position that the Delmarva life-insurance benefits are a "perquisite of seniority." Moreover, *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), relied on by defendant, undermines plaintiff's position.[2] Petitioner in *Monroe* alleged an employer has a statutory duty to make special work-scheduling accommodations for reservists so that a reservist would not lose work hours due to reserve obligations. The Court rejected this argument, noting that nothing in the statute or the legislative history indicated Congress even considered imposing on employers an obligation to provide work-scheduling preference to reservists. *Id.* at 561, 101 S.Ct. at 2517.

Plaintiff's argument closely parallels the argument rejected by the Supreme Court in *Monroe.* Delmarva treated plaintiff's decedent exactly as it would have treated any employee on unpaid leave: no credit was given, for life-insurance purposes, for wages that would have been earned during the leave. Plaintiff in effect argues Delmarva should make an exception to its policy for employees on unpaid leave due to reserve obligations. But as the *Monroe* Court pointed out, "the legislative history strongly suggests that Congress did not intend employees to provide special benefits to employee-reservists not generally made available to other employees." *Monroe,* 452 U.S. at 561, 101 S.Ct. at 2517. The Court finds this reasoning equally applicable here. Plaintiff is not entitled to have Delmarva credit her deceased husband with two weeks of earnings for the time he spent in the National Guard.

### Conclusion

Plaintiff's motion for summary judgment will be denied. Defendant's motion for summary judgment will be granted.

---

**2.** Plaintiff argues *Monroe* is inapposite simply because it was not a perquisite-of-seniority case. This argument lacks force since plaintiff's theo- ry that Delmarva's life-insurance benefits are an aspect of seniority has not been accepted.