**NATIONAL CORED FORGINGS CO., Inc. et al. v. UNITED STATES.**

No. 50420.

United States Court of Claims.

Sept. 30, 1953.

470

David Cobb, Washington, D. C., for plaintiff. I. S. Weissbrodt and Abe W. Weissbrodt, Washington, D. C., were on the briefs.

Bruce G. Sundlun, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, Washington, D. C., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

In this case plaintiffs seek to recover the sum of $309,799.29, alleged to represent either fair compensation for services rendered without a formal contract under section 17(a) of the Contract Settlement Act of 1944, 58 Stat. 665, 41 U.S.C.A. § 117(a), or damages for breach of contract by the defendant. As a third alternative, plaintiffs ask reformation of an agreement in writing on the ground of mutual mistake and of misrepresentations by the defendant, and damages for breach of the agreement as reformed. The case is before us on plaintiffs' motion to strike special defenses asserted in defendant's answer to the petition, and defendant's motion for judgment on the pleadings.

Plaintiff National Cored Forgings Company, Incorporated (hereinafter National), is successor by change of name to the Greenport Basin and Construction Company (hereinafter Greenport). Plaintiff Marloch Manufacturing Company (hereinafter Marloch) was incorporated in the State of New York in 1946 as a wholly owned subsidiary of Greenport. In the course of its dissolution in 1947, all of Marloch's assets, including the claims here asserted, were transferred to Greenport.

At the close of World War II there was a very serious housing shortage, sharply accentuated by the large number of veterans then returning to civilian life. In an effort to alleviate this shortage, Congress passed the Veterans' Emergency Housing Act of 1946, 60 Stat. 207, 50 U.S.C.App. (1946 Ed.) § 1821 et seq. U. S. Code Cong.Service 1946, p. 199. Section 12 of the Act provided that the powers vested in the Reconstruction Finance Corporation (hereinafter RFC) might be used to underwrite or guarantee markets for new type building materials and prefabricated houses, but only to the extent that the Housing Expediter [1] found this necessary to assure a sufficient supply for the veterans' emergency housing program. This section also contained the standards to be applied by the Housing Expediter to such underwriting or guaranty.

We are here concerned with a controversy growing out of a contract entered into pursuant to the market guarantee program established by section 12 of the Veterans' Emergency Housing Act, supra.

The allegations of the petition are lengthy, but we shall attempt to summarize them as briefly as possible. Pursuant to a directive of the Office of the Housing Expediter (hereinafter OHE) issued under section 12 of the Act, the RFC entered into a market guarantee contract with General Houses, Incorporated (hereinafter General Houses), an Illinois corporation, for the production of 2,000 prefabricated housing units by the end of 1947. The contract, dated February 7, 1947, contained a provision that the RFC would purchase from General Houses, at a price to be determined in

---

[1.] Section 2 of the Act created the Office of the Housing Expediter, and defined the functions and powers of the Housing Expediter. These included the formulating of plans and programs to provide for an increased supply of housing accommodations, the issuance of orders, regulations, or directives to other executive agencies, etc.

accordance with a formula contained in the contract, the prefabricated houses not otherwise sold by General Houses.

General Houses was unable to get into production under the contract, and in early March of 1947 it approached Marloch, and entered into an informal arrangement whereby Marloch would manufacture the houses at its plant with its own funds, and General Houses would act as selling agent for Marloch. This arrangement was contingent upon obtaining the government's consent.

Thereafter meetings were held with representatives of the OHE and RFC for the purpose of obtaining the consent of the government. As a prerequisite to entering into production of the houses Marloch indicated that it desired a transfer to it of the market guarantee contract. The OHE official who had been instrumental in negotiating the market guarantee contract expressed his approval of the new arrangement, and in order to save time represented to and assured Marloch that a "short-cut" technique would be worked out to provide Marloch with the same basic protections as were afforded by the government to all other producers under the market guarantee program. The basis of the "short-cut" arrangement was that in consideration of Marloch's assumption of all of General Houses' obligations under the contract, the government would consent to an assignment to Marloch by General Houses of all of its claims against the RFC under the contract. Marloch was requested to begin production immediately.

Marloch, acting in reliance on defendant's notice to proceed, took steps to get into production immediately. Pursuant to the oral arrangements with the government reached at the meeting, Marloch and General Houses executed an instrument in writing dated March 14, 1947, whereby Marloch agreed to produce the 2,000 houses and General Houses agreed to act as selling agent for Marloch. On March 27, 1947, Marloch and General Houses executed an assignment under which Marloch agreed to perform all of the obligations of General Houses under the market guarantee contract. In the instrument the RFC was requested, directed, and authorized to pay to Marloch any or all moneys due or to become due from RFC to General Houses pursuant to the contract, but General Houses was to remain liable to RFC under the terms of the contract to the same extent as if the assignment had not been made. This instrument was a standard RFC form assignment of moneys due which was modified and adapted by an employee of RFC and then submitted to Marloch and General Houses for execution. The terms of the March 27 instrument were accepted and approved by RFC.[2]

Marloch completed its first houses in May of 1947, and by June its plant was geared to produce at the rate of 20 units per day. It had no orders to fill, however, and General Houses, which had undertaken to act as selling agent for Marloch by the contract of March 14, had not been able to obtain orders for the houses.

Marloch became compelled to seek additional financing. The bank to which it went indicated a willingness to make a loan directly to Greenport, Marloch's parent company, upon the collateral of the market guarantee contract. Marloch consulted legal counsel as to the procedures for transferring the contract from it to Greenport, and was apprised for the first time that the assignment of March 27 might have been ineffective to give Marloch the market guarantee protection it thought it had obtained.

Marloch then sought a meeting with the government officials in charge of the market guarantee program. A meeting was held on July 9, 1947, at which time Marloch was again assured that it was operating under the full protection of the market guarantee contract. Shortly thereafter, however, the government representatives took the position that Mar-

2. The acceptance and approval does not appear on the face of the instrument, so far as we can determine.

loch did not have a contract with the government, and despite Marloch's urgings, this position was consistently maintained. In order to mitigate its losses, Marloch discontinued production, and arranged to liquidate the prefabricated housing enterprise.

Claims were then filed against the OHE and the RFC under section 17 of the Contract Settlement Act. The claims were denied whereupon they were appealed to the Appeal Board of the Office of Contract Settlement. The Board granted a motion of OHE to dismiss the appeal as to it because OHE was not a "contracting agency" within the definition of section 3(g) of the Contract Settlement Act, 41 U.S.C.A. § 103(g), and held that Marloch had not proceeded "without a formal contract" within the meaning of section 17(a) of the Act. National Cored Forgings Co., Inc., v. Reconstruction Finance Corporation, 5 App.Bd. OCS No. 353.

Plaintiffs thereafter timely filed a petition in this court containing the above allegations, seeking relief under section 17(a) of the Contract Settlement Act or under the general jurisdiction of this court to award damages for breach of contract. Plaintiffs also ask, as an alternative, that the court reform an agreement in writing on the ground of mutual mistake and misrepresentations by defendant, and award damages for breach of the agreement as reformed.

On the same day that the petition was filed in this court, plaintiffs filed a complaint in the United States District Court for the District of Columbia, asserting there the same claims here involved, against the RFC alone, in its corporate capacity and in its own behalf. Plaintiffs and the RFC have filed a stipulation for stay of proceedings in the District Court until final action has been taken by this court.

■ Plaintiffs' petition in this court nominates as defendants the United States, the OHE, and the RFC. Our jurisdiction is limited to the rendition of judgments upon claims against the United States, 28 U.S.C.(Supp. V) § 1491, and we therefore treat the naming of the OHE and the RFC as defendants as surplusage. Cf. Warner Construction Company v. Krug, D.C., 80 F.Supp. 81, 84.

On January 18, 1952, defendant filed a motion to dismiss plaintiffs' petition on the ground that as plaintiffs had pending in the United States District Court for the District of Columbia another suit seeking the same relief on the same claim, this court had no jurisdiction under the provisions of 28 U.S.C. (Supp. V) § 1500, quoted *infra*. After oral argument, the motion to dismiss was overruled by an order dated May 6, 1952. Defendant then filed an answer to the petition in which it asserted as special defenses (1) the failure of the petition to state a cause of action, (2) the lack of jurisdiction in this court on the ground relied on in its motion to dismiss, and (3) that under the provisions of section 13(b)(2) of the Contract Settlement Act, 41 U.S.C.A. § 113(b)(2), this court had no jurisdiction over suits where the RFC was the contracting agency. Defendant also set forth as an affirmative defense that plaintiffs were not entitled to relief under the Contract Settlement Act since the petition showed that plaintiffs had not met the requirements of section 17(a) of the Act.

Plaintiffs filed a motion to strike the special defenses on the ground that they were insufficient. Defendant then filed an answer to plaintiffs' motion to strike and a motion for judgment on the pleadings. It is on these motions that the case is presented for our determination.

■ With respect to plaintiffs' claims for damages for breach of contract and for reformation of an agreement in writing, it is defendant's position not that the petition fails to state a cause of action but that as plaintiffs attempted to recover fair compensation under section 17(a) of the Contract Settlement Act through recourse to administrative agencies, they are now precluded from claiming a right of action under the general jurisdiction of the court. We cannot

agree. There is no provision in the Contract Settlement Act which prevents a plaintiff who institutes an action in this court under section 17(a) of the Act from also invoking, in the alternative, our general jurisdiction, Pacific Maritime Association v. United States, Ct.Cl. 1953, 108 F.Supp. 603, provided the limitations of the Act as to the time within which suit must be brought are complied with. Luff v. United States, 100 F.Supp. 925, 120 Ct.Cl. 682.

■ We are of the opinion, and defendant apparently concedes, that the petition states a cause of action under the general jurisdiction of the court. The issue of whether the petition states a cause of action under the Contract Settlement Act will be discussed hereinafter.

As heretofore indicated, on January 18, 1952, defendant filed a motion to dismiss the petition in this court for lack of jurisdiction. Defendant contended that plaintiffs had pending a suit in the United States District Court for the District of Columbia in which the same relief on the same claims here involved was sought, and that under the provisions of 28 U.S.C. (Supp. V) § 1500,[3] this court had no jurisdiction over the petition. The motion to dismiss was overruled. Defendant has again raised the issue, however, and we again consider it.

■ We think that different defendants are sued in the respective cases. On the pleadings, plaintiffs' action in the District Court is a suit against the RFC in its corporate capacity and in its own behalf, not against it as an agent of the United States. First National Steamship Company v. United States, 90 Ct. Cl. 632. Plaintiffs' action in this court is a suit against the United States based on alleged wrongs committed by the OHE and the RFC as agents of the United States; it rests on the premise that the RFC, to the extent that it was employed, was operating not in its corporate capacity but as agent for the United States. With respect to the liability of the United States for the part played by the RFC, "it is obvious that there can be no recovery unless such agency is established by the evidence," First National Steamship Company v. United States, supra. Cf. Elmer G. Abbott v. United States, Ct.Cl.1953, 112 F.Supp. 801.

Under these circumstances, the provisions of section 1500 have no application.

In its answer to plaintiffs' petition, and in its motion for judgment on the pleadings, defendant has raised two serious questions with regard to plaintiffs' claims under section 17(a) of the Contract Settlement Act. This section, 41 U.S.C.A. § 117, provides in part as follows:

"(a) Where any person has arranged to furnish or furnished to a contracting agency or to a war contractor any materials, services, or facilities related to the prosecution of the war, without a formal contract, relying in good faith upon the apparent authority of an officer or agent of a contracting agency, written or oral instructions, or any other request to proceed from a contracting agency, the contracting agency shall pay such person fair compensation therefor.

\*    \*    \*    \*    \*    \*

"(c) Where a contracting agency fails to settle by agreement any claim asserted under this section, the dispute shall be subject to the provisions of section 113 of this title."

3. "§ 1500. The Court of Claims shall not have jurisdiction of any claim for or in respect to which plaintiff or his assignee has pending in any other court any suit or process against the United States, or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."

Section 13 of the Act, 41 U.S.C.A. § 113, provides in part as follows:

"Rights of war contractor

"(b) Whenever any war contractor is aggrieved by the findings of a contracting agency on his claim or part thereof or by its failure to make such findings in accordance with subsection (a) of this section, he may, at his election—

* * * * * *

"(2) bring suit against the United States for such claim or such part thereof, in the Court of Claims or in a United States district court, in accordance with subsection (20) of section 41 of Title 28, except that, if the contracting agency is the Reconstruction Finance Corporation, or any corporation organized pursuant to sections 601–617 of Title 15, or any corporation owned or controlled by the United States, the suit shall be brought against such corporation in any court of competent jurisdiction in accordance with existing law."

Defendant urges that where the contracting agency is the RFC,[4] this court has no jurisdiction over suits under the Contract Settlement Act, since section 13(b) (2) provides that "* * * if the contracting agency is the Reconstruction Finance Corporation, * * *, the suit shall be brought against such corporation in any court of competent jurisdiction in accordance with existing law." Defendant further contends that this is true regardless of whether the RFC as contracting agency acted in its corporate capacity or as agent for the United States.

▮ That this court has no jurisdiction over suits against a government corporation acting in its corporate capacity requires no citation. Where, however, a government corporation makes a contract as the agent of the United States, the United States may be sued in this court as principal on the contract. Crooks Terminal Warehouses, Inc. v. United States, 92 Ct.Cl. 401; John Morrell & Company v. United States, 89 Ct.Cl. 167; see also First National Steamship Company v. United States, supra.

We think that these principles are equally applicable to actions under section 17(a) of the Contract Settlement Act. Where a government corporation as contracting agency acts in its corporate capacity, the suit should be brought against the corporation in a court of competent jurisdiction, state or federal, not in the Court of Claims. Where, however, the government corporation as contracting agency acts as agent for the United States, as plaintiffs here allege, the action under section 17(a) should be brought against the United States in the Court of Claims or a District Court, depending on the amount involved.

▮ A suit under section 17(a) of the Contract Settlement Act against the RFC as contracting agency acting merely as agent for the United States is in essence a suit against the United States, no matter how denominated, subject to all the jurisdictional limitations of such suits. Defendant would have this court construe section 13(b) (2) as conferring jurisdiction over such suits exclusively on state or federal courts, regardless of the amount involved. Such a construction would "impute to Congress a desire for incoherence in a body of affiliated enactments and for drastic legal differentiation where policy justifies none", Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 394, 59 S.Ct. 516, 520, 83 L.Ed. 784.

▮ A fair judgment of the section in its entire setting relieves us from making such an imputation. We are of the opinion, and we hold, that under the provisions of section 13(b) (2) of the Contract Settlement Act this court has jurisdiction over suits under section 17

---

4. Defendant contends that the OHE was not a contracting agency within the definition of section 3 (g) of the Contract Settlement Act. For present purposes we assume, without deciding, that the contracting agency was the RFC.

(a) of the Act where the contracting agency is the RFC acting merely as agent for the United States and not in its corporate capacity.

■ Defendant also urges that in any event the RFC acted in its corporate capacity and not as agent for the United States. This is at best a mixed question of law and fact, not properly disposed of on a motion for judgment on the pleadings. We will hear the evidence for and against the allegations of the petition before ruling on this contention.

Defendant finally contends that the petition fails to state a cause of action under the provisions of section 17(a) of the Act. It is defendant's position that the petition shows that plaintiffs did not furnish or arrange to furnish any materials, services, or facilities (1) to a contracting agency, (2) related to the prosecution of the war, (3) without a formal contract, and (4) relying in good faith upon the apparent authority of an officer or agent of a contracting agency, written or oral instructions, or any other request to proceed from a contracting agency.

■ Conclusions should not prudently be rested on an indefinite factual foundation, Kennedy v. Silas Mason Company, 334 U.S. 249, 256, 68 S.Ct. 1031, 92 L. Ed. 1347, and it has been aptly stated that rights of action as set forth in pleadings are not always so definite and inclusive as to preclude the necessity of further light from the evidence. Kaus v. Huston, D.C., 35 F.Supp. 327, 330. The rule providing for motions for judgment on the pleadings was not intended to permit "fragmentary and separate trials of issues that require coherent presentation for their just determination", Winkler v. New York Evening Journal, D.C., 32 F.Supp. 810, 812.

Plaintiffs have alleged but one set of facts in the petition, upon which recovery in the alternative is sought. Aside from the question of whether or not the petition states a cause of action under the Contract Settlement Act, the case must proceed to the taking of testimony on the facts alleged in the petition with respect to the cause of action stated under our general jurisdiction. Under these circumstances, and without expressing any opinion as to the merits of defendant's contention, we think that the issues raised in support of the contention should be decided only after full consideration of all the facts that can be adduced at the hearing before the Commissioner of the court.

In summary, defendant's motion for judgment on the pleadings is overruled. Plaintiffs' motion to strike the defense of failure of the petition to state a cause of action under the general jurisdiction of this court is granted. We defer ruling on the defense of failure of the petition to state a cause of action under the provisions of the Contract Settlement Act until such time as all the facts are before us. Plaintiffs' motion to strike the defenses of lack of jurisdiction in this court under the provisions of 28 U.S.C. (Supp. V) § 1500 and 41 U.S.C.A. § 113(b)(2) is granted.

The case will be remanded to a Commissioner of the court for a hearing on the merits.

It is so ordered.

LITTLETON and JONES, Chief Judge, concur.

WHITAKER, Judge (dissenting).

I do not think we have jurisdiction of plaintiffs' cause of action under the Contract Settlement Act because of the provisions of section 13 of that Act.

Section 17 authorizes payment by "the contracting agency" of the Government to any person who has furnished materials or services to a "contracting agency" without a formal contract. Subsection (c) of section 17 provides that where the parties cannot agree on a settlement, the dispute may be resolved under the provisions of section 13 of the Act. Section 13 then says that an aggrieved war contractor "may, at his election—* * * bring suit against the United States for such claim or such

part thereof, in the Court of Claims or in a United States district court, in accordance with subsection (20) of section 41 of Title 28, *except that, if the contracting agency is the Reconstruction Finance Corporation,* \* \* \* the suit shall be brought against such corporation in any court of competent jurisdiction in accordance with existing law." (Italics ours.)

Now the opinion of the majority says that if the Reconstruction Finance Corporation was acting as the agent of the United States, the suit may be brought against the United States in this court; but that is directly contrary to what section 13(b) (2) says. It says that the suit may be brought in this court "except that, if the contracting agency is the Reconstruction Finance Corporation," it must be brought in a court that has jurisdiction of suits against the Reconstruction Finance Corporation. This court has no jurisdiction of such suits.

Since I think the majority opinion is directly contrary to the express provisions of the Contract Settlement Act, I am compelled to dissent.

Judge MADDEN concurs in this dissent.