Anne E. MILLER

v.

The UNITED STATES, Donald C. Alexander, Commissioner of Internal Revenue, Robert E. Hampton, Chairman, Jayne B. Spain, and L. J. Andolsek, Commissioners of United States Civil Service Commission.

Civ. A. No. 76–1082.

United States District Court,
E. D. Pennsylvania.

Oct. 11, 1977.

**516**

Edwin J. McDermott, Bala Cynwyd, Pa., for plaintiff.

Robert S. Forster, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

On May 1, 1970, plaintiff was removed from her position as an Internal Revenue Service (IRS) tax examiner. Extensive administrative and judicial review of that decision has taken place in the seven years since the discharge. In this case, plaintiff seeks a writ of mandamus (28 U.S.C. § 1361) compelling defendants to reinstate her to the position with IRS. The case is before me on cross-motions for summary judgment under Federal Rule 56.

## FACTS AND PROCEDURAL HISTORY

Plaintiff had been employed with IRS since 1966 and had become a full-time employee the following year. *See, e. g.*, Administrative Record [hereinafter cited as A.R.], pt. 1, at 243. Proceedings for her discharge were instituted on January 22, 1970, when the Director of IRS's Mid-Atlantic Service Center sent her a "Notice of Proposed Adverse Action" which informed her that she might be disciplined or discharged. *See id.* at 313–17. The notice set forth three "charges" against plaintiff, each of which was supported by various specifications in support of the charge. The first charge, supported by fourteen specifications, stated that plaintiff had violated Rules of Conduct for Internal Revenue Service Employees § 1942.52 in that she disrupted official business and caused dissension and discord in her relations with supervisors and fellow employees. *Id.* at 313–16. The second charge, which alleged violation of the same section of the IRS Rules of Conduct and was supported by two specifications, asserted that plaintiff "did not cooperate fully with official requests of properly constituted authority" in that she

would not, as ordered, arrange to undergo a physical and psychiatric examination either by the Public Health Service or a doctor of her own choice. *Id.* at 316–17. The third charge, supported by one specification, was similar to the second, asserting that plaintiff was guilty of insubordinate conduct and thus violated § 1942.52 by refusing to comply with a direct order to report to the Public Health Service on December 19, 1969 for a psychiatric evaluation to determine fitness for duty. *Id.* at 317. As a Civil Service Commission hearing examiner later explained,

"The charges appear to be progressive in that the specifications used to support Charge I were of such a nature to apparently cause the agency to decide that a physical examination and psychiatric evaluation were warranted. When the appellant resisted this action, her failure to cooperate led to Charge II. Finally, when the agency did order the appellant for a psychiatric evaluation and she refused, Charge III, insubordinate conduct, arose."

*Id.* at 137.

Plaintiff responded to the charges on February 27, 1970, in a meeting with an IRS representative. *See* A.R., pt. 1, at 174–200. On April 27, 1970, the Director of the IRS Mid-Atlantic Service Center rendered a decision sustaining the charges and specifications in the January 22 notice, explaining that plaintiff's response to the charges was "not considered acceptable." *Id.* at 170. Since the charges were sustained, the director discharged plaintiff from her employment effective May 1, 1970. *Id.*

Rather than appeal to the IRS Regional Commissioner, plaintiff, on May 11, 1970, exercised her right to appeal directly to the Director of the Philadelphia Region of the United States Civil Service Commission (CSC). A.R., pt. 1, at 165. A hearing was held before a CSC hearing examiner at the IRS Center in Philadelphia on December 15–16, 1970. *See* A.R., pt. 2. On March 25, 1971, a regional appeals examiner, acting on behalf of the Philadelphia Regional Director of the CSC, rendered a decision upholding the IRS' dismissal of plaintiff. A.R., pt. 1, at 131–42.

The appeals examiner concluded that only three of the fourteenth specifications in the January 22 notice supported the first charge against plaintiff. He ruled, however, that each of these involved incidents in which plaintiff, through her conduct or remarks, caused dissension, discord, or disruption and that the allegations in the first charge therefore should be sustained on the basis of these three specifications. *Id.* at 136–39.

As to the second charge, the appeals examiner found that under ch. 751, subch. 2, ¶ 4(b)(3)(b)–(c) of the Federal Personnel Manual, the IRS had the authority to direct plaintiff to have a fitness-for-duty examination and plaintiff did not have discretion to ignore that directive. He also found that "the agency had cause to question [plaintiff's] fitness for continued duty" (*id.* at 140) and its fitness examination directive therefore was not arbitrary or unreasonable. The record showed that plaintiff did not schedule the examination because she did not feel it was warranted, and the second charge thus was sustained because plaintiff "chose not to cooperate with properly constituted authority on this matter." *Id.* at 139–40.

As to the third charge that plaintiff was insubordinate in failing to report for a psychiatric evaluation by the Public Health Service on December 19, 1969 although she had been ordered to do so, the appeals examiner found "some merit" (*id.* at 141) to plaintiff's contention that she had reason to believe the order had been rescinded. He concluded, however, that no rescission of the order had actually occurred and plaintiff therefore was insubordinate in failing to comply. He thus sustained the third charge. *Id.* at 140–41.

The appeals examiner's "ultimate finding" was "that the agency action was taken for such cause as will promote the efficiency of the service within the meaning of that language in the Civil Service Regulations." *Id.* at 142. The removal was "found to be warranted" and no change in that action was recommended. *Id.*

On April 2, 1971, plaintiff appealed the regional appeals examiner's decision to the CSC Board of Appeals and Review. A.R., pt. 1, at 127. *See also id.* at 117–24, 108–12. That Board affirmed the appeals examiner's decision on July 2, 1971. *Id.* at 100–04. Although the Board agreed with the appeals examiner's ruling on all three charges, it added with regard to the third charge that "[plaintiff's] refusal to obey an order to undergo a fitness for duty examination is sufficient basis in and of itself to warrant her removal." *Id.* at 103. A January 3, 1972 request by plaintiff that the CSC reopen and reconsider the case (*id.* at 90–91) was denied on March 31, 1972 (*id.* at 85–86). A second request to reopen and reconsider, this time supported by additional evidence and dated April 25, 1972 (*id.* at 30–79; *see also id.* at 21–29, 5, 2), was denied by the CSC on August 16, 1972 (*id.* at 19–20; *see also id.* at 3–4, 1).

Having exhausted her administrative remedies, on October 26, 1972, plaintiff filed an action in the United States Court of Claims, alleging that she "was removed on charges as to which there was no substantial evidence" and that the removal "was arbitrary and capricious." Petition ¶ 2, *Miller v. United States,* No. 405–72 (Ct.Cl.) [513 F.2d 640]. On March 14, 1975, a panel of the Court of Claims issued an order granting the United States' motion for summary judgment and denying plaintiff's cross-motion for summary judgment. The Court stated:

"[I]t is concluded that there was more than substantial evidence to support charges II and III, and these charges were sufficient to warrant plaintiff's removal as the Civil Service Commission held. Nor was the action on those charges arbitrary or capricious. No procedural violations are alleged or shown. It is therefore unnecessary to consider whether Charge I, as upheld, was adequately supported by substantial evidence or whether it would be enough, standing by itself, to sustain the removal."

*Anne E. Miller,* 206 Ct.Cl. 870, 871 (1975).

On July 1, 1975, plaintiff filed a motion for rehearing. Included in that motion was the text of a psychiatric report by Dr. Stuart Wolfe which was based on a June 20, 1975 examination of plaintiff. The report concluded:

"I see no evidence at this time of a psychiatric disorder that would disqualify Mrs. Miller from performing the duties of her job. In reconstructing the situation at the time of her dismissal, it seems that there is no clear evidence that she had an emotional disorder sufficient to render her unfit for duty."

Motion for Rehearing at 2, *Miller v. United States, supra.*

The motion also referred to a June 9, 1975 examination of plaintiff by Dr. James J. Ryan, the report of which had not yet been received. On the basis of these reports, plaintiff contended that, if she had submitted to a psychiatric examination as demanded by IRS, she would have "been found fit for duty [and] her removal would have been cancelled by the Internal Revenue Service at that time." *Id.* at 3. The Court of Claims denied the motion for rehearing on October 3, 1975. *Miller v. United States,* No. 405–72 (Ct.Cl., Oct. 3, 1975) (unpublished order).

On April 7, 1976, plaintiff filed this mandamus action against the United States, Commissioner of Internal Revenue Donald C. Alexander, and the members of the CSC—Chairman Robert E. Hampton, Jayne B. Spain, and L. J. Andolsek. She contended that she "was removed on charges which constituted fraud" (Complaint ¶ 1). The complaint stated:

"4. Plaintiff was fraudulently charged by defendant with psychiatric problems and fraudulently directed to submit to a psychiatric examination.

5. By fraud we mean conscious wrongdoing, an intention to cheat or be dishonest.

6. Plaintiff's aforesaid removal was in violation of the Act of September 6, 1966, Pub.L. 89–544 [*sic,* 89–554], 80 Stat. 527, 5 U.S.C. 7501, Executive Order No. 10987, January 18, 1962, 27 F.R. 550, the Act of

September 6, 1966, Pub.L. 89–544 [*sic,* 89–554], 80 Stat. 528, 5 U.S.C. 7512, 33 F.R. 12491, September 4, 1968, as amended 34 F.R. 2479, February 21, 1969, 5 CFR Part 752, Adverse Actions by Agencies, and other pertinent Statutes, Executive Orders and Regulations.

WHEREFORE, plaintiff asks the Court to issue a mandamus to compel the parties defendant to perform a duty owed to plaintiff and to reinstate her in her position as Tax Examiner. . . . ."

Both sides have filed motions for summary judgment.

## DISCUSSION

Defendants contend that they are entitled to summary judgment because there is no mandamus jurisdiction in this case, plaintiff's action is barred by either res judicata or laches, and, on the merits, the agency's action was supported by substantial evidence and was not arbitrary or capricious. In support of their motion, defendants have submitted the administrative record and a record of proceedings in the Court of Claims. Plaintiff contests each of these points and contends that she is entitled to judgment on the merits as a matter of law. She has submitted an affidavit of Dr. Stuart Wolfe which is nearly a verbatim duplicate of the psychiatric report included in her motion for rehearing in the Court of Claims. She has also submitted the affidavit of Dr. Maurice E. Linden which summarizes his findings in a psychiatric examination of plaintiff conducted on an unspecified date. The acknowledgment on the latter affidavit is dated January 18, 1977.

### A. *Jurisdiction*

■ As to jurisdiction, the Mandamus Act, 28 U.S.C. § 1361, provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Defendants contend that this action is not "in the nature of mandamus" because reinstatement of plaintiff is a matter committed to defendants' discretion and mandamus will only lie if defendants owe plaintiff a clear duty to perform a ministerial, nondiscretionary act. This contention seems to contain the same defect as that noted by the Court of Appeals in *Mattern v. Weinberger,* 519 F.2d 150, 156 (3d Cir. 1975), *vacated on other grounds sub nom. Mathews v. Mattern,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976): "in effect it confuses the issue of jurisdiction under the Mandamus Act with the process of resolving the merits of plaintiff's claim." Defendants assume that their dismissal of plaintiff was a discretionary act and that any reinstatement of plaintiff would also be discretionary—a proposition which would probably be correct in most cases (*see e. g., Horne v. United States,* 419 F.2d 416, 190 Ct.Cl. 145 (1969)). In this case, however, plaintiff alleges that her dismissal was accomplished fraudulently and in violation of certain statutes and regulations governing dismissals from federal employment. If that contention is correct, the dismissal would be void and defendants might be under a clear ministerial duty to reinstate plaintiff. "[J]urisdiction can be based on § 1361 to '. . . issue appropriate corrective orders where Federal officials are not acting within the zone of their permissible discretion but are abusing their discretion or otherwise acting contrary to law. . . .' " *Davis v. Shultz,* 453 F.2d 497, 502 (3d Cir. 1971), quoting *Peoples v. United States Department of Agriculture,* 138 U.S.App.D.C. 291, 295, 427 F.2d 561, 565 (1970). There is jurisdiction, therefore, to determine whether on the merits plaintiff is entitled to mandamus relief. *See Mattern, supra,* at 155–57; *Chaudoin v. Atkinson,* 494 F.2d 1323, 1329–30 (3d Cir. 1974); *Dascalakais v. HUD,* Civil No. 75–2060, slip op. at 3–5 (E.D.Pa., Jan. 20, 1977).

### B. *Res Judicata*

Defendants' major contention is that plaintiff's recovery in this case is barred under the doctrine of res judicata. That

doctrine was explained by the Supreme Court in *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948):

"The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' *Cromwell v. County of Sac,* 94 U.S. 351, 352, [24 L.Ed. 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. See Von Moschzisker, 'Res Judicata,' 38 Yale L.J. 299; Restatement of the Law of Judgments, §§ 47, 48."

*Accord, Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578–79, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).

Due to jurisdictional restrictions, the only defendant sued by plaintiff in the Court of Claims was the United States.[1] In this court, plaintiff also has sued the Commissioner of Internal Revenue and the members of the CSC. Nevertheless, *all* of the defendants in this action contend that the judgment in the Court of Claims is a bar to plaintiff's action against them in this court. That contention is based on a correct interpretation of modern res judicata rules. The IRS and CSC commissioners are sued in their official capacities as the administrative personnel of agencies of the United States who are under the alleged duty to reinstate plaintiff. They act, of course, on behalf of the United States, plaintiff's employer. It thus would seem that they should be considered in "privity" with the United States, should that type of relationship be required for them to assert a res judicata defense in this case. The Third Circuit has held, however, that "privity" is not required in this type of fact situation:

"Where the party to be bound in a second proceeding is different from the party against whom the original adjudication was made, a close relationship between them is a requirement of fairness and may be necessary to provide due process of law. Thus, the rule that only parties and privies are bound by a prior judgment is unquestionably correct. In the present case the very party against whom the first judgment was rendered is to be bound in the subsequent action.

. . . [W]here, as in this case, *res judicata* is invoked against a plaintiff who has twice asserted essentially the same claim against different defendants, courts have . . . enlarged the area of *res judicata* beyond any definable categories of privity between the defendants. . . . We are in accord with this development of the law away from formalism which impedes the achievement of fair and desirable results."

*Bruszewski v. United States,* 181 F.2d 419, 422 (3d Cir.) (footnotes omitted), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950); *accord, Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir. 1972).

---

1. Generally, the Court of Claims only has jurisdiction to hear claims against the United States. *See* 28 U.S.C. §§ 1491–1506. Claims against other defendants are treated as surplusage. *See, e. g., National Cored Forgings Co. v. United States,* 115 F.Supp. 469, 473, 126 Ct.Cl. 250 (1953). In this case, of course, plaintiff was free to seek judicial review of the administrative rulings in either the Court of Claims or a United States District Court, and I therefore attach no significance to Court of Claims' jurisdictional limitations. *See generally* Restatement (Second) of Judgments § 61, Comment *g* (Tent.Draft No. 1, 1973). There is no allegation that the Court of Claims was not a court of competent jurisdiction to decide the issues before it. As a court established under Article III of the Constitution (28 U.S.C. § 171), its judgments are entitled to full judicial weight.

In so ruling, the Court abandoned the ancient rule of "mutuality of estoppel." 181 F.2d at 421–22; see *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974); *County of Lancaster v. Philadelphia Electric Co.*, 386 F.Supp. 934, 938–39 (E.D. Pa.1975). The Supreme Court has expressed agreement with this development. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The IRS and CSC commissioners therefore are as entitled to assert the res judicata defense in this case as is the United States.

The controlling question is whether this case and that before the Court of Claims involve the "same cause of action" (*Sunnen, supra,* 333 U.S. at 597, 68 S.Ct. 715). That term has been a persistent source of confusion. *See, e. g., United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67–68, 53 S.Ct. 278, 77 L.Ed. 619 (1933). In 1927, the Supreme Court offered the following explanation of its meaning:

"A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. The mere multiplication of grounds of negligence alleged as causing the same injury does not result in multiplying the causes of action. 'The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. "The *thing*, therefore, which in contemplation of law as its *cause*, becomes a ground for action, is not the group of *facts* alleged in the declaration, bill, or indictment, *but the result of these in a legal wrong, the existence of which, if true, they conclusively evince." ' Chobanian v. Washburn Wire Company*, 33 R.I. 289, 302, [80 A. 394]."

*Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927) (emphasis in original); *cf. Grubb v. Public Utilities Commission*, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972 (1930) (merely referring to same "subject matter").

Since that time, however, as a result of liberalized federal procedural rules, the "cause of action" concept has been considerably broadened. This development was traced by the Third Circuit in *Williamson v. Columbia Gas & Electric Corp.*, 186 F.2d 464, 469–70 (3d Cir. 1950), *cert. denied*, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951), in which the court abandoned the stringent view of "cause of action" which had been used in res judicata analysis and adopted a more flexible, pragmatic, and fact-oriented approach to the problem. The modern view is set forth in §§ 61 and 61.1 of the Restatement (Second) of Judgments (Tent. Draft No. 1, 1973), which substitute the word "claim" for "cause of action":

"§ 61. Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning 'Splitting'

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 47, 48), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

§ 61.1 Exemplifications of General Rule Concerning Splitting

The rule of § 61 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(a) To present evidence or grounds or theories of the case not presented in the first action, or

(b) To seek remedies or forms of relief not demanded in the first action."

See also id. § 61.2 (exceptions to general rule). Although the Supreme Court has not specifically embraced this view, it has noted the liberalizing trend in an opinion which expresses sensitivity to the recent evolution of res judicata doctrine. See *Blonder-Tongue, supra,* 402 U.S. at 327, 91 S.Ct. 1434.[2]

■■■ Comparing this action with that considered by the Court of Claims, I conclude that plaintiff is attempting to reliti-

gate the "same cause of action" and is barred from doing so by res judicata principles. Both actions deal with the same event, plaintiff's discharge from employment with IRS, and seek the same remedy, reinstatement.[3] In the Court of Claims action, plaintiff contended that her removal was arbitrary and capricious and that the charges on which it was based were not supported by substantial evidence. That claim required the Court to review the administrative record to assess the propriety of plaintiff's dismissal.[4] In doing so, the

2. In its recent opinion in *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Court held that a wrongful death action by the widow of a seaman injured as a result of the unseaworthiness of the defendant's vessel was not merged into a judgment obtained by her husband for personal injuries that he suffered as a result of the unseaworthiness. The Court concluded:

"*Moragne* [*v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (recognizing action for wrongful death based on unseaworthiness)] created a true wrongful-death remedy—founded upon the death itself and independent of any action the decedent may have had for his own personal injuries. Because the respondent's suit involves a different cause of action, it is not precluded by *res judicata.*" 414 U.S. at 578, 94 S.Ct. at 811 (footnote omitted).

The Court distinguished cases holding to the contrary as based "not . . . so much upon principles of *res judicata* or public policy as upon statutory limitations on the wrongful death action." *Id.* at 579, 94 S.Ct. at 812. The recent liberalization of the cause of action concept was not discussed, and although the Court's holding would fit the "legal wrong" analysis of *Baltimore Steamship, supra,* it apparently is also in accord with more modern res judicata theories. *See* Restatement (Second) of Judgments § 92.1 (Tent.Draft No. 3, 1976).

3. In the Court of Claims, plaintiff also sought back pay pursuant to the Back Pay Act, 5 U.S.C. § 5596, which authorizes an action for back pay if an employee has "undergone an unjustified or unwarranted personnel action."

4. It is evident from the order entered by the Court of Claims that that court did review the administrative record in this case. I note, however, that there is some question as to the proper scope of such judicial review. Generally, the Court of Claims has defined the scope of its review of federal personnel actions as a determination of whether they "are in good faith and supported by substantial evidence, or

whether void because arbitrary, capricious, malicious or in bad faith, in excess of legal authority or in violation of statutes and regulations." *Wathen v. United States,* 527 F.2d 1191, 1198 (Ct.Cl.1976). This standard is similar to that prescribed by the Administrative Procedure Act (APA), 5 U.S.C. § 706, which provides:

"The reviewing court shall—

\*　　\*　　\*　　\*　　\*　　\*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

Unless the action is brought under Title VII of the 1964 Civil Rights Act (*Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976); *Sperling v. United States,* 515 F.2d 465 (3d Cir. 1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976)), a suit for dismissal from government employment is not subject to trial de novo under § 706(2)(F). *See generally Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In addition, it has been held that such actions are not subject to the substantial evidence test of § 706(2)(E) because they do not involve agency actions taken pur-

Court necessarily had to consider the rationality of the decision in light of the evidence and, in particular, whether the decision was within the zone of discretion permitted administrative agencies in discharging employees. In this action, plaintiff seeks a writ of mandamus, contending that the reasons for which she was removed were fraudulent and that the removal violated certain statutes and regulations, *i. e.*, the Lloyd-La Follette Act, 5 U.S.C. § 7501 (employee may be removed "only for such cause as will promote the efficiency of the service"); Veterans' Preference Act, 5 U.S.C. § 7512 (same); Civil Service Regulations, 5 C.F.R. §§ 752.101 to 752.402 (1977) (regulating adverse actions by agencies); and Executive Order 10987, 27 Fed.Reg. 550 (1962), 3 C.F.R. 519 (1959–1963 Compilation), *reprinted in* 5 U.S.C. § 7501 (requiring appellate review within administrative agencies). This action therefore also requires review of the administrative record to determine whether the agency acted in accordance with proper procedures and within the discretion bestowed by the cited statutes and regulations. The fraud contention amounts to a charge that the reasons given for the agency action were not bona fide, a charge which requires evaluation of the evidence before the administrative tribunal. Insofar as this case involves evidence outside of the administrative record, a major part of it—the Wolfe affida-

vit—was before the Court of Claims on the motion for rehearing.

Since the injury suffered by plaintiff—discharge from her employment—is the same in both of these cases, I think that this action would be barred under the "legal wrong" test of *Baltimore Steamship, supra.* That being the case, I have no difficulty concluding that it is barred under more modern res judicata principles. The facts underlying plaintiff's claims are identical and all of her theories of recovery could have been tried conveniently at one time. Viewing both of these cases in their totality, I conclude that only one cause of action is presented, and dismissal on the basis of res judicata therefore is appropriate.

Plaintiff contends that this action is not barred because she alleges fraud. Of course, if the judgment in the Court of Claims action was obtained by fraud, it will not have res judicata effect. *See Sunnen, supra,* 333 U.S. at 597, 68 S.Ct. 715; *Grummons v. Zollinger,* 240 F.Supp. 63, 75–76 (N.D.Ind.1964), *aff'd* 341 F.2d 464 (7th Cir. 1965); Restatement of Judgments § 62(b) (1942); Restatement (Second) of Judgments § 61.2(1)(g) (Tent. Draft No. 1, 1973). Plaintiff makes no such claim, however. The only fraud in this case is that which forms one of the substantive bases for her claim. In that sense, fraud is nothing more than an alternate ground for re-

suant to the APA's provisions regarding rulemaking or public adjudicatory hearings (and thus are not subject to 5 U.S.C. §§ 556, 557) or actions in which an agency hearing is mandated by statute (*see* APA, 5 U.S.C. §§ 553(a)(2), 554(a)(2); Lloyd-La Follette Act, 5 U.S.C. § 7501; Veterans' Preference Act, 5 U.S.C. § 7512). *Wroblaski v. Hampton,* 528 F.2d 852, 853 & n.1 (7th Cir. 1976); *Wood v. United States Post Office Department,* 472 F.2d 96, 99 & nn.3–4 (7th Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973); *cf. Brown v. Zuckert,* 349 F.2d 461, 463 (7th Cir. 1965), *cert. denied,* 382 U.S. 998, 86 S.Ct. 588, 15 L.Ed.2d 486 (1966). As a result, a review of the evidence under the APA is governed by the narrow "arbitrary, capricious, an abuse of discretion" standard of § 706(2)(A). Even under that standard, however, a "searching and careful" review of the record is required. *Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. 814. The Court of Claims has not directly applied the

APA to federal personnel actions. *See Wathen, supra,* at 1197–98 & n.6; *cf. John J. McGrath,* 207 Ct.Cl. 978 (1975) (citing provision of APA, 5 U.S.C. § 701(a)(2), providing exception to judicial review if "agency action is committed to agency discretion by law"). *But cf. Overton Park, supra,* 401 U.S. at 410–13, 91 S.Ct. 814 (§ 701(a)(2) is a "very narrow exception" to judicial review under APA). The substantial evidence test which it did apply was somewhat more stringent than the standard of APA § 706(2)(A). *Compare Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (substantial evidence test), *with Overton Park, supra,* 401 U.S. at 416, 91 S.Ct. 814 (APA abuse of discretion test). *See also Wood, supra,* 472 F.2d at 99 n.4. Since this scope of review question has no bearing on the res judicata issue before me, I express no opinion as to which test is proper in federal personnel cases.

covery that should have been asserted in plaintiff's first lawsuit. Plaintiff has suffered an adverse judgment by a court of competent jurisdiction in this cause of action. She therefore is barred from relitigating this matter.

### C. Laches

■■■ Although the res judicata holding disposes of this case, I note defendants' alternate contention that if this case does not present the same cause of action as that before the Court of Claims, it is barred by laches. Under that equitable doctrine, if a plaintiff has inexcusably delayed filing suit and has prejudiced the defendant as a result, he may not recover a judgment in his favor. See Gruca v. United States Steel Corp., 495 F.2d 1252, 1258–60 (3d Cir. 1974); Baczor v. Atlantic Richfield Co., 424 F.Supp. 1370, 1379–81 (E.D.Pa.1976). Although laches is an affirmative defense for the defendant (Fed.R.Civ.P. 8(c)), the length of time for which plaintiff has delayed filing suit can give rise to a rebuttable presumption of laches. Gruca, supra, 1258–59; Baczor, supra, at 1379. I do not believe that such a presumption has arisen in this case,[5] but I do note that it appears to be easier to establish laches in cases involving dismissal of government personnel than in other types of cases. The controlling authority on this matter is United States ex rel. Arant v. Lane, 249 U.S. 367, 372, 39 S.Ct. 293, 294, 63 L.Ed. 650 (1919), in which the Supreme Court stated:

"When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.

Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy."
Accord, Nicholas v. United States, 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133 (1921); Norris v. United States, 257 U.S. 77, 80–81, 42 S.Ct. 9, 66 L.Ed. 136 (1921); Drown v. Higley, 100 U.S.App.D.C. 326, 244 F.2d 774 (1957) (per curiam); Coughlin v. Ryder, 260 F.Supp. 256, 259–60 (E.D.Pa. 1966).

Plaintiff was discharged by IRS on May 1, 1970. Administrative action on her case was completed by April 25, 1972. Yet, plaintiff did not institute this action until April 7, 1976. Given these facts and considering the Supreme Court's statements in Arant, I believe that this claim is barred by laches.

Plaintiff's delay in filing suit was inexcusable. She was vigilant in seeking administrative relief from her dismissal and judicial review in the Court of Claims.

---

**5.** The presumption arises if the plaintiff has delayed suit for a period of time greater than that of an analogous statute of limitations. Gruca, supra, at 1259; Baczor, supra, at 1379. Counsel have not addressed the issue of what statute of limitations should be considered in determining whether a presumption of laches has arisen. One possibility is the six-year period applicable to actions in the Court of Claims, 28 U.S.C. § 2501. See Coughlin v. Ryder, 260 F.Supp. 256, 258 (E.D.Pa.1966). A more likely choice is the Pennsylvania Statute of Limitations of 1713, 12 P.S. § 31, providing for a six-year period in breach of contract actions. Cf. Gruca, supra, at 1259 (applying 1713 Act to veteran's seniority status claim). Since plaintiff instituted this action three weeks before a six-year period had expired since her dismissal, I do not hold that a presumption of laches has arisen. Of course, the fact that the analogous limitations period has not expired does not preclude a finding that plaintiff's delay in filing suit was inexcusable. Gruca, supra, at 1259 n.8.

There is no reason why she could not have been vigilant in pursuing this action as well. Plaintiff is not relying on any evidence which had previously been unavailable. The only evidence outside of the administrative record—the psychiatric reports which plaintiff offers through affidavits—could have been easily obtained at a time much closer to her dismissal. The only explanation offered for the delay in filing suit is that plaintiff has been engaged in administrative and judicial proceedings to obtain reinstatement. If this case is on an entirely separate cause of action from that litigated in those proceedings, however, the fact that those proceedings were pending is of little significance. At the least, plaintiff could have filed a protective action to preserve her rights in case she did not obtain the relief sought in the other litigation. Of course, if, as I believe, these cases involve the same cause of action, my earlier comments on res judicata are controlling.

With regard to prejudice resulting from the delay, the considerations set forth in *Arant*—personnel changes at IRS, accumulation of unearned salary—are applicable. *Arant* demonstrates the strong public policy considerations in this area, and I have no reason to believe that these considerations are entitled to any less weight in this case than they were in *Arant*.

I conclude that defendants have been prejudiced by plaintiff's inexcusable delay in filing this lawsuit. If this is a separate cause of action, it is barred by laches.

### D. *The Merits*

This matter has been in dispute for a long period of time. In the hope that it will aid in putting this entire matter to an end, I shall briefly discuss the merits of this case. I note that since this is a motion for summary judgment, no party can prevail unless "there is no genuine issue as to any materi-

al fact and . . . the . . . party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties do not dispute the facts as stated in the administrative record and the affidavits submitted by plaintiff.

Plaintiff contends that she is entitled to a writ of mandamus compelling her reinstatement because defendants are under a mandatory duty to rectify her unlawful discharge. She contends that the discharge was unlawful because it was based on fraudulent charges and was brought about in violation of certain statutes and regulations. My review of the evidence, however, persuades me that the discharge was not unlawful.

▮▮▮ Plaintiff contends that the discharge was in violation of the Lloyd-La Follette Act, 5 U.S.C. § 7501, and the Veterans' Preference Act, 5 U.S.C. § 7512. ·Each of these statutes permits removal of a government employee "only for such cause as will promote the efficiency of the service." [6] *See generally Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (discussing Lloyd-La Follette Act). The reasons given for plaintiff's discharge were disruption and causing dissension, failure to cooperate with official requests of her superiors, and insubordination in refusing to comply with a direct order of her superiors. I have no doubt that, in the abstract, each of these causes is such "as will promote the efficiency of the service."· Focusing solely on the last charge, surely the failure to follow a direct order will not promote efficiency in an administrative office which requires supervisory control. I have examined the administrative record and find that there was sufficient evidence to support the insubordination charge. *See, e. g.*, A.R., pt. 2, at 38, 41, 59–62, 67–70 (testimony of plaintiff admitting that she did not undergo psychiatric examination al-

---

**6.** The Lloyd-La Follette Act, 5 U.S.C. § 7501, applies to employees "in the competitive service," which includes all employees in the executive branch except those subject to Senate confirmation and those specifically excepted by statute (5 U.S.C. § 2102). The Veterans' Preference Act, 5 U.S.C. § 7512, applies to "prefer-

ence eligible employees," a class of special employees, including veterans and their mothers and spouses, who have completed a trial period as an executive agency employee (5 U.S.C. §§ 2108(3), 7511). Because the same standard applies under both Acts, it is not necessary to determine which Act applies to this case.

though ordered to do so). On the basis of that charge alone, therefore, plaintiff was lawfully removed for a cause which "will promote the efficiency of the service."

Plaintiff also contends that the discharge was unlawful for failure to comply with the CSC regulations on adverse actions against government employees, 5 C.F.R. §§ 752.101 to 752.402 (1977). Section 752.104(a) of these regulations repeats the cause for removal standard stated in the Lloyd-La Follette and Veterans' Preference Acts. The remainder of the regulations deal with procedures to be followed during discharge or other adverse actions—notice, an opportunity to answer, and a right to appeal to the CSC.[7] The procedural history detailed at the beginning of this opinion demonstrates that these procedures were followed with regard to plaintiff's discharge.

Plaintiff cites Executive Order No. 10987, 27 Fed.Reg. 550 (1962), 3 C.F.R. 519 (1959–1963 Compilation), *reprinted in* 5 U.S.C. § 7501.[8] In that order, President Kennedy directed all federal agencies to establish intra-agency procedures for appellate review of agency decisions adverse to employees and directed the CSC to issue regulations governing that appellate system. In this case, plaintiff was entitled to appellate review within IRS but elected instead to pursue her remedies in CSC. IRS appellate review governed by CSC regulations was nonetheless available to plaintiff; therefore her discharge was not pursuant to procedures which violated the executive order.

The only remaining basis for finding plaintiff's discharge unlawful is the fraud contention. Plaintiff has not specifically pleaded the basis for her allegation of fraud. *See generally* Fed.R.Civ.P. 9(b). From her briefs, however, it appears that plaintiff asserts that the reasons for which she was directed to report for a psychiatric examination were fraudulently manufac-

tured by IRS and that her discharge was unlawful for that reason. On the basis of the affidavits of Drs. Wolfe and Linden, she argues that she was not mentally unfit for her job and that IRS therefore lacked a valid reason for ordering her to undergo an examination.

The Wolfe and Linden affidavits provide generally favorable psychiatric evaluations of plaintiff. Dr. Wolfe specifically states that he sees no evidence of a psychiatric disorder that would render plaintiff unable to perform the duties of her job or that shows that she had an emotional disorder which would render her unfit for duty. Dr. Wolfe examined plaintiff in 1975 and, while the date of Dr. Linden's examination is not known, the 1977 acknowledgment on his affidavit makes it reasonable to assume that his examination also was quite recent. I therefore question the relevance of this evidence insofar as it relates to plaintiff's mental condition in 1970, the date of her dismissal. In any event, even assuming that plaintiff was mentally fit at the time of her discharge, the record contains no evidence of fraud. Although plaintiff may in fact have been mentally fit for duty, IRS was certainly within its rights in ordering a psychiatric examination to ascertain that fact. The CSC appeals examiner specifically found that on three occasions plaintiff was involved in incidents causing dissension, discord, and disruption. The record supports his finding that these incidents occurred, and, while I need not and do not decide whether they in fact support the charge of disruption, I do agree that they could form the basis for IRS' examination order. That order did not contain a charge that plaintiff was mentally ill; it was merely a means of determining plaintiff's mental state. The fact that plaintiff in fact was mentally fit does not establish fraud in ordering the examination.

---

7. Similar procedures, with some variations, are mandated by the Lloyd-La Follette and Veterans' Preference Acts. The record shows that they were complied with in this case.

8. Executive Order No. 10987 was revoked by President Nixon in 1974. Executive Order No. 11787, § 2, 39 Fed.Reg. 20675 (1974), 3A C.F.R.

151 (1974 Compilation), *reprinted in* 5 U.S.C. § 7701. The new order provides that the sole system of appellate review is that provided by the CSC. *Id.* § 1. Executive Order No. 10987 was still in effect at the time of plaintiff's discharge.

Plaintiff's entire argument in this case seems to have missed the point. She was not discharged because she was mentally unfit for duty. She was discharged because she caused dissension, failed to cooperate with her supervisors, and was insubordinate. Her mental fitness at the time of discharge is not material to those reasons. Her discharge was entirely lawful and, that being the case, defendants are under no duty to reinstate her. Defendants' motion for summary judgment therefore will be granted.